Nancy BORGEN and Michael Borgen, Plaintiffs-Respondents,†

v.

ECONOMY PREFERRED INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 91–3085. Submitted on briefs June 24, 1992.—Decided April 29, 1993.*

(Also reported in 500 N.W.2d 419.)

†Petition to review filed.

500

For the defendant-appellant the cause was submitted on the briefs of *Terry J. Booth* of *Fellows, Piper & Schmidt* of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the brief of *Thomas M. Olson* of La Crosse.

Before Eich, C.J., Dykman and Sundby, JJ.

SUNDBY, J. Economy Preferred Insurance Company appeals from a summary judgment determining that plaintiffs' action is not time-barred by the limitation-of-action clause of its policy or by the statute of limitations, sec. 631.83(1)(a), Stats., applicable to actions under property damage indemnity insurance policies. Economy claims that the "date of loss" under its policy's limitation-of-action clause, and the "inception of the loss" under sec. 631.83(1)(a), is the date on which the loss occurs and not the date on which the loss is discovered or should have been discovered. We conclude that the plaintiffs' cause of action is time-barred by sec. 631.83(1)(a) because it was not brought within twelve months of the inception of their loss. We therefore reverse the judgment and direct the trial court on remand to grant Economy's motion for summary judgment.[1]

---

[1] Because our conclusion is based on the statute of limitations, we need not consider Economy's argument that the Borgens' action is time-barred by its policy. Furthermore, we do

501

Plaintiff Nancy Borgen lived in a home she owned jointly with her son, plaintiff Michael Borgen. They insured the home against damage, including hail damage, with Economy from April 1, 1989, to April 1, 1990. The roof of the house was damaged by hail in a storm on August 4, 1989.[2] However, the damage was not observed until October 1990. On June 7, 1991, the Borgens began this action against Economy to recover the cost of repairing the roof.

On September 9, 1991, Economy moved for summary judgment dismissing the Borgens' complaint as time-barred under its policy and under sec. 631.83(1)(a), Stats. On October 4, 1991, the Borgens filed an affidavit and brief in support of summary judgment in their favor. On November 20, 1991, the trial court entered judgment for the Borgens.

Economy's policy provides: "No action can be brought unless . . . the action is started within one year *after the date of loss*." (Emphasis added.) Section 631.83(1)(a), Stats., provides: "An action on a fire insurance policy must be commenced within 12 months *after the inception of the loss*." (Emphasis added.) "Fire insurance," as used in sec. 631.83(1)(a), includes all types of property damage indemnity insurance. *Villa*

---

not reach Economy's argument that the Borgens' affidavit provided insufficient grounds for the trial court's grant of summary judgment in favor of the Borgens.

[2] The Borgens contend that the date of the hail damage is disputed. The affidavits conflict. However, at the motion hearing, Borgens' counsel did not dispute Economy's statement that the hail damage occurred on August 4, 1989. Counsel represented to the court that the only issue before the court was an issue of law, *i.e.*, the court's interpretation of the statute of limitations. Therefore, the Borgens have waived their claim that the hail damage may have occurred on a later date.

*Clement, Inc. v. National Union Fire Ins. Co.*, 120 Wis. 2d 140, 147, 353 N.W.2d 369, 372 (Ct. App. 1984). Economy argues that its policy and sec. 631.83(1)(a) unambiguously provide that the period within which an action must be brought on its policy begins to run on the date of the loss and not on the date of discovery of the loss.

The Borgens argue that the policy language is ambiguous and is to be construed against Economy. *Just v. Land Reclamation, Ltd.*, 155 Wis. 2d 737, 746, 456 N.W.2d 570, 573 (1990). They point out that they could not give notice of their "loss" as required by the policy until they discovered the loss. They contend that "loss" as used in the limitation-of-action clause should be construed as is "loss" in the notice-of-loss clause. They further argue that the "clear and obvious" construction of sec. 631.83(1)(a), Stats., is that the "inception" of a loss is when it is or should have been discovered.

The construction of the language of an insurance policy presents a legal question which we decide independently on appeal. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990). Likewise, the construction of a statute presents a question of law. *Scott v. First State Ins. Co.*, 151 Wis. 2d 286, 293, 444 N.W.2d 405, 407 (Ct. App. 1989), *aff'd*, 158 Wis. 2d 608, 456 N.W.2d 152 (1990).

The Borgens argue that the period in which they could begin their action could not begin to run until they knew that they had a cause of action, that is, when their cause of action "accrued." They quote extensively from *Hansen v. A. H. Robins Co.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983), where the Wisconsin Supreme Court adopted the "discovery rule" for tort

actions. There, the court said that "[i]t is manifestly unjust for the statute of limitations to begin to run before a claimant could reasonably become aware of the injury." *Id.* at 559, 335 N.W.2d at 582. In *CLL Assocs. Ltd. Partnership v. Arrowhead Pacific Corp.*, 174 Wis. 2d 604, 497 N.W.2d 115 (1993), however, the Wisconsin Supreme Court said that the policy considerations which militate in favor of a discovery rule for tort actions "do not favor a broadly applied discovery rule in the contract context." *Id.* at 613, 497 N.W.2d at 118-19. *CLL Assocs.* was an action for breach of contract. The court held that sec. 893.43, Stats.,[3] required the plaintiff to begin its breach of contract action within six years of the breach, regardless of the plaintiff's knowledge of the breach or diligence in discovering the breach.

We do not deal, however, with a statute which bars an action after a period of limitation computed from the date the claimant's cause of action "accrues." Section 631.83(1)(a), Stats., provides: "An action on a fire insurance policy must be commenced within 12 months after the inception of the loss." Irrespective of Economy's limitation-of-action clause, the statute controls. Therefore, we must determine the meaning of "inception of the loss." We search for the legislature's intent, not the intent of the contracting parties.

We conclude that "inception of the loss" clearly and unambiguously means the date on which the loss

---

[3] Section 893.43, Stats., provides:

An action upon any contract, obligation or liability, express or implied, including an action to recover fees for professional services, except those mentioned in s. 893.40, shall be commenced within 6 years after the cause of action accrues or be barred.

occurs. When the language of a statute is unambiguous, we do not ordinarily resort to extrinsic evidence such as legislative history to determine its meaning. *State ex rel. Girouard v. Circuit Court for Jackson County*, 155 Wis. 2d 148, 154-56, 454 N.W.2d 792, 795-96 (1990). We may, however, determine the meaning of words which do not have a technical meaning by resort to a standard dictionary. "Resort to definitions, statutory or dictionary, is appropriate for the purpose of determining meaning that is plain on the face of the statutes." *Id.* at 156, 454 N.W.2d at 796.

■

The key word in sec. 631.83(1)(a), Stats., is not "loss," as the Borgens argue, but "inception." "Inception" means: "beginning; start; commencement." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 966 (2d ed. unabridged, 1987). Thus, the phrase "inception of the loss" rules out a construction which would postpone the start of the period of limitation until the insured's loss is discovered, or should have been discovered.

The phrase "inception of the loss" has been construed authoritatively by the Wisconsin Supreme Court. In *Riteway Builders, Inc. v. First Nat'l Ins. Co.*, 22 Wis. 2d 418, 423, 126 N.W.2d 24, 26 (1964), the court said:

> The language, "commenced within twelve months next after inception of the loss," means from the date of the damage suffered by the insured from any peril covered by the policy of insurance and is not restricted to the peril of fire and lightning. In *Townsend v. Milwaukee Ins. Co.* (1962), 15 Wis. (2d) 464, 113 N.W.(2d) 126, which involved a fire claim, we interpreted the phrase "inception of the loss" to

mean damage which had its inception at the time of the fire.

The phrase "inception of the loss" is found in the New York Standard Fire Form Policy which served as the standard in almost every state. *See Prudential-LMI Commercial Ins. v. Superior Court*, 798 P.2d 1230, 1235 (Cal. 1990). By 1968, the 1943 New York standard policy had been adopted by forty-six states, including Wisconsin. *Peloso v. Hartford Fire Ins. Co.*, 267 A.2d 498, 500 (N.J. 1970) (citing 3 RICHARDS, INSURANCE § 497, at 118 (1968)). Because the New York standard policy language has been the model for almost all other states' property damage indemnity policies, there is a wealth of decisions construing "inception of the loss." The overwhelming weight of authority is that "inception of the loss" refers to the date of the injury or damage and not to the date when the loss is discovered or, in the exercise of reasonable diligence, when the loss could have been discovered.[4]

---

[4] *See Sager Glove Corp. v. Aetna Ins. Co.*, 317 F.2d 439, 441 (7th Cir.), *cert. denied*, 375 U.S. 921 (1963) (loss has "inception" whether or not insured knows of it); *Herring v. Middle Ga. Mut. Ins. Co.*, 254 S.E.2d 904 (Ga. Ct. App. 1979) ("inception" unambiguously refers to actual loss); *Wabash Power Equipment Co. v. International Ins. Co.*, 540 N.E.2d 960, 965 (Ill. App. Ct. 1989) (Illinois courts have refused to adopt discovery rule as to date-of-loss time limit); *Brunner v. Economy Preferred Ins. Co.*, 597 N.E.2d 1317 (Ind. Ct. App. 1992) (action for hail damage to apartment building roof barred because not brought within twelve months of damage); *Robinson's Home Outfitting Co. v. Globe Indem. Co.*, 187 N.W.2d 522, 522 (Mich. Ct. App. 1971) (limitation period runs from date of damage, not date of denial of liability); *Peloso v. Hartford Fire Ins. Co.*, 267 A.2d 498, 500 (N.J. 1970) (majority of courts hold that limitation period runs

Some courts have ameliorated the effect of the one-year inception-of- loss statute. In *Peloso*, 267 A.2d 498, the New Jersey court tolled the period of limitation from the time the insured gave notice until the insurer denied liability. The court plainly applied equitable principles. The California Supreme Court has adopted a delayed discovery rule: the insured's suit will be considered timely if brought within one year after appreciable damage occurs and insured's duty to notify the insurer is triggered. *Prudential-LMI Commercial Ins.*, 798 P.2d at 1238.

A few courts have adopted a discovery rule. *See, e.g., Finkelstein v. American Ins. Co.*, 62 So.2d 820 (La. 1952), *overruled, Gremillion v. Travelers Indem. Co.*, 240 So.2d 727 (La. 1970) (Louisiana Supreme Court then adopting widespread majority rule that claim must be brought within twelve months of event causing loss); *Phoenix Ins. Co. v. Brown*, 381 S.W.2d 573 (Tenn. Ct. App. 1964). These courts have reasoned that "inception of the loss" must be read in conjunction with policy provisions requiring the insured to supply proof of loss

from date of casualty insured against); *Proc v. Home Ins. Co.*, 217 N.E.2d 136 (N.Y. 1966) (twelve months measured from occurrence of fire); *Margulies v. Quaker City Fire and Marine Ins. Co.*, 97 N.Y.S.2d 100, 104 (N.Y. App. Div. 1950) (" 'Inception of the loss' is equivalent to the occurrence of the casualty or event insured against."); *Marshburn v. Associated Indem. Corp.*, 353 S.E.2d 123 (N.C. Ct. App. 1987) ("inception" necessarily means the beginning of the loss); *General State Authority v. Planet Ins. Co.*, 346 A.2d 265, 267 (Pa. 1975) (limitation period runs from date of destructive event); *Lardas v. Underwriters Ins. Co.*, 231 A.2d 740, 742 (Pa. 1967) (such language too plain and unequivocal to be subject to ambiguity); and *Simms v. Allstate Ins. Co.*, 621 P.2d 155, 157 (Wash. Ct. App. 1980) ("inception" is not date cause of action accrues). This list of decisions is representative, not exclusive.

and delaying the insurer's liability for a period after proof of loss is received by the company. *See Peloso*, 267 A.2d at 501 (discussing *Finkelstein* and *Phoenix*). *See also Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223 (Alaska 1973) (time period runs from date of accrual of cause of action occasioned by insurer's refusal to pay claim); *Meadows v. Employers' Fire Ins. Co.*, 298 S.E.2d 874 (W. Va. 1982) (time period runs from insurer's refusal to pay loss).

The Borgens urge this approach. We find nothing contradictory or illogical in applying a discovery rule to the insured's duty to give notice of its loss, *RTE Corp. v. Maryland Casualty Co.*, 74 Wis. 2d 614, 623, 247 N.W.2d 171, 176 (1976), while simultaneously construing "inception" of a "loss" in the statute of limitations to refer to the actual date of damage or injury. The statute of limitations serves values different from notice-of-loss requirements.

The Borgens argue that *Townsend v. Milwaukee Ins. Co.*, 15 Wis. 2d 464, 113 N.W.2d 126 (1962), supports their position. In *Townsend*, the insured suffered fire losses. The court said that "inception of the loss" meant "the beginning, the commencement, the origination." *Id.* at 468, 113 N.W.2d at 129. The Borgens claim that *Townsend* is authority for a discovery rule because the court said: *"The loss in the present action* had its inception at the time of each of the fires. Because no reason or excuse is given for failure to commence the action within the statutory period, no substantial issue of fact remains . . . ." *Id.* (emphasis added in respondent Borgens' brief). The Borgens read this statement as a holding that the facts of other cases could extend the period of limitation. We do not read *Townsend* so

expansively. The court correctly recognized that there may be a defense in a particular case to insisting on the bar of a statute of limitations. A defendant may be estopped from erecting the bar. *Heezen v. Hartland Cicero Mut. Ins. Co.*, 63 Wis. 2d 449, 452-53, 217 N.W.2d 272, 274-75 (1974). The *Townsend* court did not suggest, however, that the period of limitation under sec. 683.81(1)(a), Stats., could be extended.

■■■

As noted in *Prudential-LMI Commercial Ins.*, the one-year suit provision which first appeared in the "Model New York Standard Fire Form Policy" was adopted to prevent fraudulent fire claims. The forty-six legislatures which adopted or prescribed the one-year period of limitation considered that a comparatively short period of limitation would protect the insurer from stale or fraudulent fire claims which could not be adequately investigated because of the passage of time. Whether that same value is served by a one-year statute of limitations as to other liability policy claims is a question which has been answered by the legislature. We may not supersede the legislature's decision by judicial construction of the plain language of the statute.

*By the Court.*—Judgment reversed and cause remanded with directions.