BRONSTEATTER & SONS, INC., Plaintiff-Appellant,†

v.

AMERICAN GROWERS INSURANCE COMPANY, Mt. Morris
Insurance Company, Vine Vest, LLC, Durkee
Insurance Agency, Inc., and United States
Liability Insurance Group,
Defendants-Respondents.

Court of Appeals

*No. 2005AP115. Submitted on briefs June 6, 2005.*
*—Decided July 26, 2005.*

2005 WI App 192

(Also reported in 703 N.W.2d 757.)

† Petition to review denied 11-11-05.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of co-counsel, *Diana R. Schira* of *Schira Law Firm, S.C.* of Mosinee; and *Mark C. Kareken* of Merrill.

On behalf of the defendant-respondent, Mt. Morris Insurance Company, the cause was submitted on the brief of *Todd Joseph Koback* and *Thomas Terwilliger* of *Terwilliger, Wakeen, Piehler & Conway, S.C.* of Wausau.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.   Bronsteatter & Sons, Inc., appeals a summary judgment denying coverage under a Mt. Morris Insurance Company farmowner's insurance policy for a loss it sustained to its 2002 corn crop.[1] Bronsteatter argues the circuit court erred by concluding its claims were barred by the one-year statute of limitations of WIS. STAT. § 631.83(1).[2] We disagree and affirm the judgment.

## BACKGROUND

¶ 2.   Bronsteatter is a corporation in the business of cash crop farming. In 2002, it purchased a Mt. Morris farmowner's insurance policy through Durkee Insur-

---

[1] Bronsteatter also appeals a judgment denying coverage under an American Growers Insurance Company crop hail insurance policy. However, American Growers is in liquidation and we granted its motion to stay in a March 30, 2005, order. Therefore, that portion of the appeal is not before us.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

ance Agency, Inc. The policy covered, in certain instances, property damage caused by vandalism.

¶ 3. Sometime on May 17 or 18, 2002, Bronsteatter's twelve-row corn planter was vandalized, damaging the mechanism that regulated the flow of fertilizer onto two of the rows. As a result, seeds planted in those rows were overfertilized, which killed the germinating seeds. Bronsteatter was unaware of the vandalism and planted over 1,000 acres of corn with the damaged planter.[3] Bronsteatter eventually realized that two rows of every twelve planted were not growing, inspected the planter and discovered the vandalism. On June 3, 2002, Bronsteatter reported the damage to the Marathon County Sheriff's Department and to Mt. Morris.

¶ 4. Bronsteatter commenced this action on June 4, 2003. As relevant to this appeal, it sought a declaration of coverage under the Mt. Morris policy and claimed Mt. Morris breached the insurance contract by not paying for Bronsteatter's crop damage.

¶ 5. The parties filed cross-motions for summary judgment. The circuit court granted summary judgment in favor of Mt. Morris on the basis of WIS. STAT. § 631.83(1)(a), which requires an action on this type of policy "be commenced within 12 months after the inception of the loss."[4] The court reasoned that "the inception of the loss" was "the act of planting seeds with the vandalized planter." Because the planting occurred

---

[3] Bronsteatter's brief-in-chief states that 1,100 acres were planted, citing to the police report contained in the record. However, the police report states that 1,300 acres were damaged.

[4] The court granted summary judgment in favor of American Growers for the same reason.

prior to June 3, 2002, Bronsteatter's complaint was untimely filed. Therefore, the court granted Mt. Morris summary judgment.

## STANDARD OF REVIEW

¶ 6. We review a summary judgment independently, using the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). Summary judgment methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. The interpretation of a statute and its application to undisputed facts are questions of law that we review independently. *Garcia v. Mazda Motor of Am.*, 2004 WI 93, ¶ 7, 273 Wis. 2d 612, 682 N.W.2d 365.

## DISCUSSION

¶ 7. The parties agree that the Mt. Morris policy is governed by WIS. STAT. § 631.83(1)(a): "An action on a fire insurance policy must be commenced within 12 months after the inception of the loss."[5] However, the parties disagree as to what date constitutes the inception of the loss. Bronsteatter argues that the inception of its loss did not occur until it completed its corn

---

[5] The term "fire insurance," as it is used in the statute, includes all types of property damage indemnity insurance. *Borgen v. Economy Preferred Ins. Co.*, 176 Wis. 2d 498, 504–05, 500 N.W.2d 419 (Ct. App. 1993).

harvest in December 2002, making its June 4, 2003, complaint timely. Mt. Morris counters that the inception of the loss was the vandalism, which happened in May 2002, prior to the June 3, 2002, police report. The circuit court took a third approach, fixing the inception of the loss at the time of planting.

¶ 8.  This is not the first time we have been asked to interpret the phrase "inception of the loss" of WIS. STAT. § 631.83(1)(a). In *Borgen v. Economy Preferred Ins. Co.*, 176 Wis. 2d 498, 500 N.W.2d 419 (Ct. App. 1993), the Borgens' home was damaged by an August 1989 hailstorm. However, the Borgens did not discover the damage until October 1990. The circuit court dismissed the Borgens' June 1991 complaint as untimely under § 631.83(1)(a). On appeal, the Borgens argued that the "inception of the loss" was the date they discovered the damage, not the date of the storm. We held that " 'inception of the loss' clearly and unambiguously means the date on which the loss occurs." *Id.* at 504–05. We explained, "The key word in sec. 631.83(1)(a), Stats., is not 'loss,' as the Borgens argue, but 'inception.' 'Inception' means: 'beginning; start; commencement.' " *Id.* at 505 (citation omitted). Because the Borgens' loss began on the date of the storm, not the date they discovered the damage, their complaint was untimely.

¶ 9.  Like the Borgens' arguments, Bronsteatter's arguments on appeal focus on the term "loss." It asserts that "loss" means "damage" and thus the relevant date for determining compliance with WIS. STAT. § 631.83(1)(a) is the date of damage. Because here the damage is crop yield reduction, it contends the date of damage was the harvest's completion in December 2002, which revealed a reduced crop yield.

¶ 10.  The problem with Bronsteatter's argument is that it ignores the word "inception." While the damage or loss Bronsteatter seeks recovery for is reduced crop yield, we agree with the circuit court that the inception of that loss was the moment the overfertilized seeds were planted with the vandalized corn planter. That Bronsteatter did not know what the actual yield from the field would be, and therefore could not exactly value that loss, does not mean that it was not damaged at the time of planting.

¶ 11.  Bronsteatter also argues there is a distinction between the damage date—the date relevant under WIS. STAT. § 631.83(1)(a)—and the date of the insured-against peril or "event." Often, the two dates are simultaneous, as in *Borgen*, where the hail damage occurred at the time of the event, the hailstorm. Here, however, Bronsteatter contends, its damage (reduced corn yield) occurred long after the event (vandalism), and the twelve-month time limit under the statute must be computed from the later damage date.

¶ 12.  Bronsteatter offers no Wisconsin precedent to support the distinction between the damage date and the event date.[6] Even if the distinction were legally relevant, Bronsteatter's argument hinges on the same premise we rejected above:   that it suffered no damage or loss until the completion of the crop harvest. We agree with the circuit court's analysis:

---

[6] Bronsteatter seeks support for this distinction in an unpublished federal case, *Vogel v. Cincinnati Ins. Co.*, No. CIV.A.95–C-452, 1997 WL 33284143 (E.D. Wis. Aug. 14, 1997). We find no persuasive value in this case, which turned largely on the specific homeowners' policy language regarding dry rot and hidden decay, and decline to adopt its reasoning.

While the full extent of [Bronsteatter]'s loss may not have been known until the crop was harvested, that loss did not begin at harvest time. It began when the seeds were planted with the vandalized planter, such that certain rows were overfertilized and prevented from growing properly.

Thus, even accepting Bronsteatter's contention that the event and damage did not occur simultaneously, the date of the inception of the loss is not the date of harvest, but rather the date of planting. Bronsteatter planted the corn prior to June 3, 2002, when Bronsteatter noticed the missing rows of corn and reported the damage to police, making its June 4, 2003, complaint untimely.

*By the Court.*—Judgment affirmed.