DONALD JACKSON AND NANCY JACKSON, Appellants, v. STATE FARM FIRE AND CASUALTY COMPANY, Respondent.

No. 22026

July 31, 1992

835 P.2d 786

*C. Nicholas Pereos,* Reno, for Appellants.

*Haefner & Enzenberger,* Reno, for Respondent.

## OPINION

*Per Curiam:*

Appellants Donald and Nancy Jackson ("Jacksons") sought

insurance coverage for structural damage to their home. Because State Farm Fire and Casualty Company ("State Farm") denied their claim, the Jacksons brought this action. The district court, however, granted State Farm summary judgment. For the reasons discussed herein, we reverse and remand this matter.

## FACTS

In July 1977, Mr. Jackson purchased a used home in Reno.[1] Through disclosures in the purchase agreement, Mr. Jackson was informed that repairs had been made to the home to correct a settling problem and that said repairs had been made to the satisfaction of the City of Reno. In September 1977, Mr. Jackson purchased homeowner's insurance from State Farm. The Jacksons maintained homeowner's coverage through the date of the litigation (approximately ten years) by renewing the policy annually.

At some unknown date, the Jacksons noticed small wall cracks in their home. In 1987, they retained Pezonella Associates, Inc., an engineering firm, to investigate these cracks. An employee of Pezonella Associates, Inc., inspected the Jacksons' home and opined that the cracks in the wall were the result of an "incipient slope failure occurring on the steep creek embankment located behind this residence and the adjacent property." In June 1987, Ray Pezonella informed the Jacksons that the house had suffered some structural damage.

The Jacksons made a claim with State Farm, but State Farm denied the claim on the ground that the structural damage was caused by "earth movement," an uninsured peril. Thereafter, the Jacksons brought this action against State Farm, alleging breach of contract and bad faith torts.[2] They claimed that their home suffered continuous and ongoing gradual damage which was the result of negligent construction by a third party. The district court bifurcated the Jacksons' breach of contract claim from the remaining claims.

State Farm moved for summary judgment on the breach of contract claim, arguing that the applicable policy, the last policy issued to the Jacksons, excluded losses resulting from negligent construction and earth movement. In opposition, the Jacksons

---

[1] The Jacksons were not married at the time of the purchase. They were married several years later on September 29, 1981.

[2] Specifically, their complaint alleged the following claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unfair claim settlement practices; and (4) intentional infliction of emotional distress. Also, the Jacksons named Frank Taylor, a resident claim superintendent for State Farm, as a defendant. However, he is not a party to this appeal.

argued that the first policy issued to them controlled their claim and that it did not exclude losses resulting from negligent construction. The district court entered summary judgment for State Farm on this claim.

State Farm next moved for summary judgment on the remaining claims. State Farm argued that the remaining causes of action were premised on the Jacksons' insurance claim being covered, but because their loss was not covered under the applicable policy, the Jacksons could not prevail on these causes of action as a matter of law. The district court again granted State Farm summary judgment.

## DISCUSSION

This case involves the oft-stated summary judgment standard of review: State Farm was entitled to have its motion granted only if no genuine issue of material fact remained for trial, and State Farm was entitled to judgment as a matter of law. American Federal Savings v. County of Washoe, 106 Nev. 869, 871, 802 P.2d 1270, 1272 (1990).

It is undisputed that the Jacksons' home suffered progressive property damage. However, the parties dispute the cause of the damage, each side supporting their position by competent evidence. In reviewing orders granting summary judgment, we view the evidence most favorable to the party against whom summary judgment was entered. *See, e.g.,* Nevada State Bank v. Jamison Family Partnership, 106 Nev. 792, 796, 801 P.2d 1377, 1380 (1990). Therefore, for purposes of this appeal, we accept the Jacksons' position that the damage resulted from negligent construction.

We must first determine which policy controls the Jacksons' loss. The Jacksons contend that the policy purchased at the inception of coverage, effective September 1977 through September 1978, is controlling. State Farm contends that the policy which was effective from September 1986 through September 1987 is controlling. In order to resolve this question, the Jacksons urge this court to adopt the so-called "continuous exposure" rule and State Farm, in turn, urges this court to adopt the "manifestation" rule.

Pursuant to the continuous exposure rule, the loss is apportioned between "those insurers whose policies insured the risk during the period from the date when the damage first occurred to the date of its discovery by the insured." Prudential-LMI Ins. v. Superior Court, 798 P.2d 1230, 1243 (Cal. 1990). Under the manifestation rule, only the carrier whose policy was effective when the progressive damage became manifest is liable. *Id.*[3]

---

[3]More recently, these theories have been described as the "triggers of coverage" which identify the event constituting an "occurrence"/"loss."

These theories developed out of a series of California cases. California first adopted the continuous exposure rule in California Union Ins. Co. v. Landmark Ins. Co., 193 Cal.Rptr. 461 (Ct.App. 1983). In that case, the insureds installed a swimming pool during Landmark Insurance Company's (Landmark) policy period. *Id.* at 462-63. The pipes leaked during Landmark's policy period and during the subsequent insurer's, California Union's, policy period, causing landslide damage. *Id.* at 463-64. Corrective repairs were attempted during Landmark's policy period, even though the actual cause of the damage had not yet been discovered. *Id.* at 463. Consequently, the damage continued into the period insured by California Union. *Id.* Landmark and California Union disputed the liability of the damage that developed after the initial attempt to correct the problem. *Id.* at 464.

The court articulated and applied the continuous exposure rule, stating:

> [I]n a "one occurrence" case involving continuous progressive and deteriorating damage, the carrier in whose policy period the damage first becomes apparent remains on the risk until the damage is finally and totally complete, notwithstanding a policy provision which purports to limit the coverage solely to those accidents/occurrences within the time parameters of the stated policy term.

*Id.* at 469. The court concluded that Landmark was liable for the damage which occurred after the termination date of its policy. *Id.* at 470-71. The court further held that California Union was jointly and severally liable even though the damage had its genesis in the installation of the pool and even though the damage

---

Montrose Chemical Corp. v. Admiral Ins. Co., 5 Cal.Rptr.2d 358, 364 (Ct.App. 1992). The *Montrose* court explained that under the continuous exposure analysis:

> [T]he timing of the *cause* of the bodily injury or property damage . . . is immaterial (it doesn't matter if it was before or during the policy period), as is the date of discovery of the injury or damage (which may not be contemporaneous), and it is only the *effect* (the bodily injury or property damage) which matters. Under this theory, if injury or damage is continuous or progressive throughout successive policy periods, coverage is triggered under the policies in effect for all periods.

*Id.* (emphasis in original). Pursuant to the manifestation analysis:

> [T]he critical date is that point in time when appreciable damage occurs and is or should be known to a reasonable insured. Where the loss is continuous and progressive throughout successive policy periods but is not discovered until after expiration of some of the policies, only the policy in effect at the time of manifestation affords coverage. Under this analysis, a policy commencing after manifestation (discovery) affords no coverage, notwithstanding that the injury or damage may continue into the effective period of the post-discovery policy.

*Id.* at 364-65.

had manifested before California Union had issued its policy. *Id.*

In 1990, the California Supreme Court addressed which of several successive insurers was responsible for a covered loss discovered by the insured seven years after it commenced. *Prudential-LMI,* 798 P.2d at 1232. The court concluded that *California Union* was materially distinguishable in that it involved a third-party liability case.[4] *Id.* at 1246. In the first-party context, concluded the court, the manifestation rule furthered sound public policy:

> [T]he manifestation rule in the first party context "promotes certainty in the insurance industry and allows insurers to gauge premiums with greater accuracy. Presumably this should reduce costs for consumers because insurers will be able to set aside proper reserves for well-defined coverages and avoid increasing such reserves to cover potential financial losses caused by uncertainty in the definition of coverage."

*Id.* at 1246 (quoting Home Ins. Co. v. Landmark Ins. Co., 253 Cal.Rptr. 277, 282 (Ct.App. 1988)). Furthermore, where successive policies have been issued by different insurers, the reasonable expectations of the insured are fulfilled because the insured seeks coverage through his present carrier. *Id.* at 1247. Accordingly, the court held that the manifestation rule applies in first-party progressive property loss cases where the loss occurs during several policy periods but is not discovered until a later policy is in effect. *Prudential-LMI,* 798 P.2d at 1246. Before the manifestation, the loss is a mere contingency whereby the insured has not yet suffered a compensable loss. *Id.* The manifestation triggers indemnity unless the loss is specifically excluded under the policy. *Id.*

We agree with the reasoning in *Prudential-LMI,* namely, that

---

[4]The court cited Garvey v. State Farm Fire and Cas. Co., 770 P.2d 704 (Cal. 1989) for authority that first-party insurance cases are materially different from third-party liability cases. The *Garvey* court identified two major differences. First, the liability analysis differs between the two types of insurance. *Id.* at 710. Property insurance is a contract where the insurer agrees to indemnify the insured in the event that the property insured suffers a covered loss. *Id.* Coverage is provided by reference to enumerated perils. In contrast, coverage under a third-party liability policy involves traditional concepts of torts, where the insurer agrees to cover the insured for a broader spectrum of risks than in the property insurance context. *Id.*

Second, under the all-risk property policy, the exclusions generally are the limitation on coverage. *Id.* at 711. Under the liability portion of the policy, on the other hand, the initial focus is on the insured's legal obligation to pay for injury or damage arising out of an "occurrence." *Id.*

in first-party liability cases, the manifestation rule promotes greater certainty in the insurance industry (which ultimately results in lower costs to the insureds) and enables the reasonable expectations of the insureds to be met. Moreover, when *California Union* articulated its equal exposure rule, it relied on several asbestos cases. *See* Keene Corp. v. Insurance Co. of North America, 667, F.2d 1034 (D.C.Cir. 1981); Insurance Co. of North America v. Forty-Eight Insulations, 633 F.2d 1212 (6th Cir. 1980). The need to apportion the astronomical damages associated with asbestos cases supports the equal exposure rule; however, those same considerations are not present in progressive property damage cases. We therefore adopt the manifestation rule, as articulated in *Prudential-LMI,* in first-party progressive property loss cases.

Manifestation of loss is defined as "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." *Prudential-LMI,* 798 P.2d at 1247. The manifestation date will generally be a question of fact; nonetheless, summary judgment may be appropriate where the undisputed evidence establishes that no damage had been discovered before a given date. *Id.*

In the present action, there is insufficient evidence to accurately establish the manifestation date. While the Jacksons were informed in 1987 that the cracks in the wall were the result of structural damage, the record does not reveal when the Jacksons first learned of the wall cracks and whether that discovery in and of itself was sufficient to constitute the manifestation date. Consequently, there remains a material issue of fact as to whether the structural problems became manifest during the 1986-87 policy period or a prior policy period.[5] The district court therefore erred in granting State Farm summary judgment as to the breach of contract claim.

The district court entered summary judgment as to the remaining claims based on the finding that State Farm properly denied coverage and thus did not breach its contract with the Jacksons. Because the district court erred in granting State Farm summary judgment as to the breach of contract claim, we hold that summary judgment as to the remaining claims was also improper.

Finally, because of our resolution of this appeal, we conclude

---

[5]The record only contains the 1977-78 policy and the 1986-87 policy. It is therefore unclear what exclusions exist in the remaining policies issued by State Farm.

that it is unnecessary to address the remaining contentions. Accordingly, we reverse the district court's judgment and remand this matter for proceedings consistent with this opinion.