**KIEF FARMERS COOPERATIVE ELEVATOR COMPANY, Plaintiff and Appellant,**

v.

**FARMLAND MUTUAL INSURANCE COMPANY, Defendant and Appellee.**

Civ. No. 950011.

Supreme Court of North Dakota.

July 3, 1995.

Thomas A. Wentz, Jr., of Pringle & Herigstad, PC, Minot, for plaintiff and appellant.

Bruce H. Carlson, of McNair, Larson & Carlson, Fargo, for defendant and appellee.

VANDE WALLE, Chief Justice.

Kief Farmers Cooperative Elevator Company [Kief] appealed from a summary judgment dismissing its claim that Farmland Mutual Insurance Company [Farmland] is obligated under its contract of insurance to pay for property damage and business income loss incurred by Kief. We reverse and remand for further proceedings.

In 1985, Kief erected a 100,000 bushel grain storage bin at its facility in Butte. The contractor, however, incorrectly installed the wall side discharge flume hoods. The wall side discharge flume system was used only once, on May 26, 1988, when a unit train was loaded at the Butte facility. According to Kief's professional engineer, this use immediately damaged the upper half of the wall and roof of the bin, and the "resulting damage was magnified on each load/unload cycle subsequent to the original use of the side discharge flume." The engineer said the damage to the bin "would be difficult, if not impossible, for a non-expert to observe or discover." Kief employees did not notice any damage to the bin until it was brought to their attention on May 15, 1992. Kief incurred expenses for repairing the bin and suffered a loss of business income while the bin was being repaired.

Farmland provided property, casualty and liability coverage to Kief under one-year policies which extended continuously from July 1, 1984, through August 1, 1991. Old Republic Insurance Company [Republic] provided insurance for covered losses on Kief's business property located in Butte under a policy

in effect from August 1, 1991, until August 1992.

On May 6, 1994, Kief sued both Farmland and Republic, alleging that they were jointly and severally liable for the property damage to the bin and for the business income loss resulting from the period of its repair. Kief settled with Republic, and Republic was dismissed from the action.

■ Kief moved for summary judgment against Farmland, asserting that the loss and damage occurred during the Farmland policy periods and that the loss and damage were caused by covered perils. The property insurance section of the Farmland "CommercialGard" policy[1] provided in part:

"h. Policy Period, *Coverage Territory*

"Under this coverage section:

"(1) *We cover loss* or damage commencing:

"(a) During the policy period shown in the declarations; ..."

[Emphasis in original]. "Loss" is defined as "direct and accidental *loss* or damage." [Emphasis in original]. "Accident" is defined as "a sudden unforeseen or unintended event." "Occurrence" is defined as "an *accident,* including continuous or repeated exposure to substantially the same general harmful conditions." [Emphasis in original]. "Property damage" is defined as "[p]hysical injury to tangible *property,* including all resulting *loss* of use of that *property;* or ... *[l]oss* of use of tangible *property* that is not physically injured." [Emphasis in original].

The policy further provided:

"*We* will pay for the actual *loss* of Business Income *you* sustain due to the necessary suspension of *your operations* during the *period of restoration.* The suspension must be caused by direct physical *loss* of or damage to *property* covered under the *Real Property* and *Business Personal*

*Property* and *Stock* coverage of this policy, caused by or resulting from any covered cause of *loss.*"

[Emphasis in original]. The "period of restoration" is defined in part as:

"the period of time that:

"a. Begins with the date of direct physical *loss* or damage caused by or resulting from any Covered Cause of *Loss* at the described *premises;* and

"b. Ends on the date when the *property* at the described *premises* should be repaired, rebuilt or replaced with reasonable speed and similar quality.

\* \* \* \* \* \*

"The expiration date of this policy will not cut short the *period of restoration.*"

[Emphasis in original].

The trial court granted summary judgment against Kief, concluding that although some amount of the loss and damage involved would have been covered, the Farmland policy did not provide coverage "for an occurrence or accident that commences during the policy period, but that does not result in loss or damage until after coverage ends." The trial court ruled the language of the policy was "clear and unambiguous," and that:

"Unless the policy provides otherwise, where the manifestation of damages is delayed, the insurance coverage is triggered when the property damage becomes known to the victim or the property owner. In this case, the manifestation of damages was delayed until after the Farmland policy was cancelled. As a result, Farmland is not liable for the loss."

Kief appealed.

■ Summary judgment, if appropriate, may be granted against the moving party. N.D.R.Civ.P. 56(c); *Spier v. Power Concrete, Inc.,* 304 N.W.2d 68 (N.D.1981). Summary

---

1. Kief requests that we strike two items from Farmland's separate appendix because they were not presented to the trial court and are therefore not a part of the record on appeal. *See* N.D.R.App.P. 10(a). These items are parts of Republic's policy and the Farmland policy it claims was actually in effect from July 1, 1987, to July 1, 1988. According to Farmland, the only policy in the record and upon which the parties

argued over in the trial court covered the period from July 1, 1990, to July 1, 1991. However, Farmland points out that, regardless of which of its two policies we consider, no coverage is available for Kief. We grant Kief's request to strike the challenged items from Farmland's appendix and do not consider them. *See Vanover v. Kansas City Life Ins. Co.,* 438 N.W.2d 524 (N.D. 1989).

judgment is appropriate if, after viewing the evidence in the light most favorable to the party against whom judgment has been entered, there are no genuine issues of material fact or conflicting inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Roen Land Trust v. Frederick*, 530 N.W.2d 355 (N.D.1995).

 Interpretation of an insurance policy is a question of law, fully reviewable on appeal. *Hart Const. Co. v. American Fam. Mut. Ins.*, 514 N.W.2d 384 (N.D.1994). Applying contract construction principles, we attempt to give effect to the mutual intention of the parties at the time of contracting by ascertaining that intent through the language of the contract itself, giving effect to all of its provisions if possible. *Continental Cas. Co. v. Kinsey*, 499 N.W.2d 574 (N.D.1993). Unambiguous language will be given its clear meaning. *State Farm v. LaRoque*, 486 N.W.2d 235 (N.D.1992). Ambiguity in contract language exists when the language can be reasonably construed as having at least two alternative meanings, and whether the contract is clear and unambiguous is a question of law for the court to decide. *State Farm Fire and Cas. Co. v. Sigman*, 508 N.W.2d 323 (N.D.1993). We consider whether a person not trained in the law or in the insurance business can clearly understand the language. *Aid Ins. Services, Inc. v. Geiger*, 294 N.W.2d 411 (N.D.1980). Because insurance policies are adhesion contracts, in applying the rules to resolve ambiguities, we balance the equities in favor of providing coverage to the insured. *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179 (N.D.1994).

Kief asserts the trial court erred in ruling that the policy provision limiting coverage to "loss or damage commencing ... [d]uring the policy period" unambiguously meant insurance coverage is triggered only when the property damage becomes known to the property owner. Kief claims the policy provision is ambiguous and that the court should have interpreted it to mean that, absent language to the contrary, loss or damage commences when the property injury or damage first began, not when it is discovered. According to Kief, because the damage began on May 26, 1988, when the unit train was loaded at the Butte facility, the Farmland policy must provide coverage.

Farmland asserts that we, like the trial court, should interpret the policy provision to mean that, in first-party progressive property-loss cases, when the loss occurs over the periods of several successive policies and is not discovered until years after the damage commences, the insurer at the time the damage becomes known is solely responsible for coverage. Because the damage was not discovered until May 15, 1992, while Kief was insured by Republic rather than Farmland, Farmland contends its policy provides no coverage.

 In the typical property insurance situation, the occurrence of damage and its manifestation will be simultaneous, thus averting the interpretation problem we encounter here. However, in this situation, because the damage occurred at an earlier time, but did not manifest itself until a later date, and because Kief and Farmland each offered rational but different meanings for the policy coverage provision, we conclude that the provision is ambiguous when applied to these facts.[2] *See, e.g., Corwin Chrysler–Plymouth v. Westchester Fire*, 279 N.W.2d 638 (N.D.1979).

 In the context of third-party liability insurance,[3] courts have developed several dif-

---

**2.** Farmland asserts that Kief cannot raise the ambiguity issue on appeal because Kief did not claim in the trial court that the coverage language was ambiguous. We disagree.

Both parties argued their differing interpretations of the coverage language to the trial court. When both parties to a contract contend that contractual provisions are unambiguous, but that their legal effect as a matter of law supports their contrary interpretations, the parties together nec-

essarily raise an ambiguity issue. *See Johnson v. Mineral Estate, Inc.*, 343 N.W.2d 778 (N.D.1984). Here, the trial court determined that the policy language was "clear and unambiguous," and agreed with Farmland's interpretation. The ambiguity issue was sufficiently raised in the trial court to preserve it for appeal.

**3.** A third-party liability insurance policy provides coverage for the insured's liability to another in which the insurer generally assumes a contractu-

ferent analytical theories for determining when loss or damage occurs, thereby triggering coverage, in cases where an injury-causing condition is known to have taken place at some previous time, but manifestation of the injury is delayed to a later date. *See* Annot., *Event triggering liability insurance coverage as occurring within period of time covered by liability insurance policy where injury or damage is delayed—modern cases,* 14 A.L.R.5th 695 (1993), and cases collected therein. Some courts have applied the "exposure" rule, holding that where manifestation of the injury is delayed, liability insurance coverage is triggered when the initial exposure to an injury-causing condition takes place. *Id.* at § 3. Some courts have applied the "manifestation" rule, holding that where manifestation of injury is delayed, liability insurance coverage is not triggered until the personal injury or property damage becomes known to the victim or property owner. *Id.* at § 4. Other courts have applied the "continuous exposure" rule, holding that where manifestation of injury is delayed, liability insurance coverage is triggered so that insurance policies in effect during different time periods, from exposure to harm through manifestation of injury, all impose a duty to defend or indemnify. *Id.* at § 5. Still other courts have applied the "injury-in-fact" rule, holding that where the manifestation of injury is delayed, liability insurance coverage is triggered when real personal injury or actual property damage first occurs. *Id.* at § 6. The injury-in-fact theory "diverges from the manifestation and exposure theories only when injury-in-fact is not simultaneous with manifestation or exposure." *Sentinel Ins. v. First Ins. Co. of Hawai'i,* 76 Hawai'i 277, 875 P.2d 894, 917 (1994). The injury-in-fact rule "has been justified [by courts] on the ground that it is most consistent with the plain language of the [insurance] policies" at issue. M. Brady and K. Franks, *Trigger of Coverage in Environmental Cases,* 45 Fed'n Ins. & Corp.Couns.Q. 65, 73 (1994).

Kief asserts that we adopted the injury-in-fact rule in *Friendship Homes v. American States Ins.,* 450 N.W.2d 778 (N.D.1990), and should apply it here. In *Friendship Homes,* 450 N.W.2d at 779, we construed an occurrence liability policy which defined "property damage" as "physical injury to or destruction of tangible property *which occurs during the policy period. . . .*" [Emphasis in original]. The owner of a building damaged by a 1987 fire caused by a fireplace that was negligently installed in 1984 sued the fireplace installer's liability insurer to recover damages. Although the liability insurer's policy was in effect when the fireplace was negligently installed, the policy had lapsed by the time of the fire. We said the language of the policy was "clear and unambiguous" and followed "the well-settled rule that the time of the occurrence of an accident, within the meaning of a liability indemnity policy, is not the time when the wrongful act was committed [*i.e.,* installation of the fireplace], but the time when the complaining party was actually damaged [*i.e.,* the fire itself]." *Friendship Homes,* 450 N.W.2d at 780. We rejected the owner's argument that property damage, within the meaning of the policy, occurred when the fireplace was negligently installed.

This case differs from *Friendship Homes* in important respects. In *Friendship Homes,* there was no delay in manifestation of the damage or injury, as there is here. The damage or injury resulting from the fire was immediately obvious. Moreover, unlike this case, *Friendship Homes* involved a third-party liability insurance policy.

■ Farmland asserts that, whatever the turmoil over the issue in the area of third-party liability insurance, the proper rule to be applied is more settled in the context of a first-party property insurance contract.[4] Farmland primarily relies on *Prudential–LMI Ins. v. Superior Court,* 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990), in urging us to affirm the trial court's decision.

---

al duty to pay judgments recovered against the insured arising from the insured's negligence. *Sentinel Ins. v. First Ins. Co. of Hawai'i,* 76 Hawai'i 277, 875 P.2d 894, 906 (1994).

4. A first-party property insurance policy provides coverage for loss or damage sustained by the

insured in which the insurer usually promises to pay money to the insured upon the happening of the risk insured against. *Sentinel Ins., supra* note 3, 875 P.2d at 906.

In *Prudential–LMI*, the California Supreme Court adopted the manifestation rule for allocating indemnity between successive first-party property insurers for progressive losses spanning multiple policy periods. In that case, an apartment building owned by the insured sustained property damage of a continuing, progressive nature. The insured discovered an extensive crack in the apartment unit's foundation. The crack had been caused by gradual soil expansion which could have occurred over several policy periods. The insured sued four companies which had insured the building during a 15–year period. One of them, Prudential, provided coverage for a period ending before the damage was first manifest. Deciding in favor of Prudential and against the insured, the court held:

> "in first party progressive property loss cases, when, as in the present case, the loss occurs over several policy periods and is not discovered until several years after it commences, the manifestation rule applies. As stated above, prior to the manifestation of damage, the loss is still a contingency under the policy and the in-

sured has not suffered a compensable loss."

*Prudential–LMI*, 798 P.2d at 1246. Thus, the carrier insuring the property at the time of manifestation of the property damage was "solely responsible for indemnification...." *Prudential–LMI*, 798 P.2d at 1232.[5]

In *Prudential–LMI*, 798 P.2d at 1233, the policy insured against "all risks of direct physical loss ...," but the court did not appear to find critical to its decision the specific policy language involved. The court noted the issue could be resolved by placing responsibility on (1) the insurer insuring the risk at the time the damage began, (2) the insurer insuring the risk at the time the damage manifested itself, or (3) all insurers on the risk under an allocation or exposure theory of recovery. The court adopted the manifestation rule based on public policy. The court said the manifestation rule would promote "certainty in the insurance industry," resulting in lower costs to the insured, and would enable "the reasonable expectations of the insureds" to be met by looking to their present carrier for coverage. *Prudential–LMI*, 798 P.2d at 1246, 1247.[6] The *Pru-*

**5.** A related issue in *Prudential–LMI Ins. v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 390, 798 P.2d 1230, 1233 (1990), was the interpretation of a suit-limitation clause appearing in the insurance policy, which provided that " '[n]o suit or action on this policy for the recovery of any claim shall be sustainable ... unless commenced within 12 months next after inception of the loss.' " [Footnote omitted]. The court adopted a delayed discovery rule, and held that the phrase "inception of the loss" meant

> "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered. We also hold that this limitation period should be equitably tolled from the time the insured files a timely notice, pursuant to policy notice provisions, to the time the insurer formally denies the claim."

*Prudential–LMI*, 274 Cal.Rptr. at 389, 798 P.2d at 1232.

In this case, Farmland asserted in its answer that Kief's "claims in part or in whole are barred by applicable statutes of limitations, or limitations against actions against an insurer as set forth in the policies of insurance." The Farmland policy here contains a suit-limitation clause requiring that suit be "brought within two (2) years after the date on which the direct physical *loss* or damage occurred." [Emphasis in original].

Neither Kief nor Farmland has mentioned this suit-limitation provision, let alone argued that it should have any significance in how this appeal is decided. Because the parties have failed to attach any significance to the suit-limitation clause in this case, we do not consider it in this opinion.

**6.** The court limited its holding "to the first party progressive property loss cases in the context of a homeowner's insurance policy" because of the "substantial analytical differences" between first-party property and third-party liability policies. *Prudential–LMI*, 274 Cal.Rptr. at 389, 798 P.2d at 1232. The court had earlier outlined those differences in *Garvey v. State Farm Fire and Cas. Co.*, 48 Cal.3d 395, 257 Cal.Rptr. 292, 298, 770 P.2d 704, 710 (1989):

> "[T]he right to coverage in the third-party liability insurance context draws on traditional tort concepts of fault, proximate cause and duty. This liability analysis differs substantially from the coverage analysis in the property insurance context, which draws on the relationship between perils that are either covered or excluded in the contract. In liability insurance, by insuring for personal liability, and agreeing to cover the insured for his own negligence, the insurer agrees to cover the insured for a broader spectrum of risks."

In *Garvey*, the court held that where coverage for a first-party property insurance claim is at issue

*dential–LMI* holding has been adopted by at least one other jurisdiction. *See Jackson v. State Farm Fire and Casualty*, 108 Nev. 504, 835 P.2d 786 (1992).

■ While the *Prudential–LMI* decision may provide certainty for both California insurers and insureds that did not otherwise exist, we do not believe that the manifestation rule is recognized as an industry-wide standard in the first-party property insurance context. The benefits of certainty in the insurance industry do not always override the interests of justice and the rights of the parties to contract. *See Savoy Medical Supply Co., Inc. v. F & H Mfg. Corp.*, 776 F.Supp. 703 (E.D.N.Y.1991). We decline to ignore policy language and adopt the *Prudential–LMI* rationale here, where most of the policies in this case were entered into before that decision was rendered. We conclude that the language of the policy itself, as well as the nature of the loss or damage, must be examined to determine the appropriate trigger. *See, e.g., Leafland v. Ins. Co. of North America*, 118 N.M. 281, 881 P.2d 26 (1994) [relying on language of first-party property policy, court held because claimed loss occurred prior to time insurance was purchased, and was only discovered while policy was in effect, there was no coverage]; *Villella v. Public Employees Mut. Ins. Co.*, 106 Wash.2d 806, 725 P.2d 957 (1986) [relying on language of first-party property policy, court ruled there was no coverage because insured must sustain a covered injury or loss,

however minute, during effective period of policy and property damage occurred only after policy expired].

■ The policy in this case covers "loss or damage commencing . . . [d]uring the policy period." "Commence" means to "begin, start, originate." Webster's Third New International Dictionary p. 456 (1967). As such, if property loss or damage begins during the policy period, coverage is triggered. There is no language which purports to condition, limit, or connect the commencement of property loss or damage to when that damage was discovered. *See Abex Corp. v. Maryland Cas. Co.*, 790 F.2d 119 (D.C.Cir.1986); *American Home Prod. Corp. v. Liberty Mut. Ins. Co.*, 565 F.Supp. 1485 (S.D.N.Y.1983), *aff'd as modified*, 748 F.2d 760 (2d Cir.1984); *Scottsdale Ins. v. American Empire Surplus Lines*, 811 F.Supp. 210 (D.Md.1993); *Rucker v. Pacific FM, Inc.*, 806 F.Supp. 1453 (N.D.Cal.1992); *SCSC Corp. v. Allied Mut. Ins.*, 515 N.W.2d 588 (Minn.Ct.App.1994). The policy language does not even hint that property damage must be known to anyone in order to trigger coverage, or that property damage does not exist unless someone knows about it. *See Dow Chemical Co. v. Associated Indemnity Corp.*, 724 F.Supp. 474 (E.D.Mich.1989); *U.S. Gypsum Co. v. Admiral Ins. Co.*, 268 Ill.App.3d 598, 205 Ill.Dec. 619, 643 N.E.2d 1226 (1994).

A review of the insurance contract as a whole not only highlights the ambiguity in this case but also helps resolve it. The ab-

and a loss is caused by concurrent causes, coverage exists only if a covered cause is the efficient proximate cause, or a predominant cause of the loss.

The California Supreme Court has not yet decided whether to apply the manifestation trigger to third-party liability policies. But the issue is presently pending before the court. *See Armstrong World Inds., Inc. v. Aetna Cas. & Sur. Co.*, 35 Cal.App.4th 192, 26 Cal.Rptr.2d 35 (1993), *review granted sub nom., In re Asbestos Insurance Coverage Cases*, 27 Cal.Rptr.2d 488, 866 P.2d 1311 (1994); *Montrose Chem. Corp. v. Admiral Ins. Co.*, 25 Cal.App.4th 1503, 5 Cal.Rptr.2d 358, *review granted*, 24 Cal.Rptr.2d 661, 862 P.2d 661 (1992); *Stonewall Ins. Co. v. City of Palos Verdes Estates*, 34 Cal.App.4th 244, 29 Cal.App.4th 98, 9 Cal.Rptr.2d 663, *review granted*, 11 Cal.Rptr.2d 329, 834 P.2d 1147 (1992).

Notwithstanding the California Supreme Court's concern over the analytical differences

between first-party property and third-party liability policies, the Ninth Circuit Court of Appeals recently predicted that the California Supreme Court would adopt a manifestation trigger for third-party liability insurance claims based essentially on the same public policy reasons expressed in *Prudential–LMI*. *See Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 41 F.3d 429 (9th Cir.1994). The court reasoned that "[a]s in first party insurance, a manifestation trigger presumably will promote certainty in the third party insurance industry because an insurer can be confident that it will not be liable for a loss once its policy period has ended and no loss has manifested," thus benefiting "insureds, who will pay lower premiums." *Chemstar, Inc.*, 41 F.3d at 435. In regard to the reasonable expectations of the insureds, the court said "[a] manifestation trigger can no more deprive [the insured] of reasonably anticipated coverage than it can upset reasonable expectations in first party insurance." *Id.*

sence of discovery-type language in the first-party property section of the policy takes on added significance when compared with language in another section of the policy. Under "Crime Insurance" relating to *Employee* Dishonesty," the following condition is imposed: *"Loss* is covered only if discovered not later than one year from the end of the policy period, and then this insurance shall apply only to *loss* sustained during the policy period." [Emphasis in original]. This provision indicates that Farmland knew how to linguistically limit coverage to loss or damage that is discovered outside of the policy period, but is sustained during the term of coverage. This further suggests that discovery is not a prerequisite to an occurrence of loss or damage under the property insurance section of the policy.

■ The language used here most closely approximates the language of an "occurrence" policy in a third-party liability context. Generally, an "occurrence" policy provides coverage if the event insured against takes place within the policy period, regardless of when the injured party makes a claim. *See* 1 R. Long, *The Law of Liability Insurance* § 1.08[4] (1995). On the other hand, a "claims made" or "discovery" policy provides coverage only if a claim arising from a hazard insured against is presented during the policy period, thus making the presentation of the claim the most significant factor in the triggering of coverage. *Id.*

"Claims made" or "discovery" coverage was designed to limit, and therefore to more accurately predict, a carrier's risk and exposure and permits the carrier to establish reserves without regard to inflation or other future economic and legal developments, resulting in lower premiums than are charged for an "occurrence" policy. *Sentinel Ins.,* 875 P.2d at 918. Several courts have recognized that interpreting an "occurrence" policy to provide coverage only when the injury or damage becomes manifest during the policy period unfairly transforms the more expensive "occurrence" policy into a cheaper "claims made" policy. *See Scottsdale Ins.,* 811 F.Supp. at 215; *Sentinel Ins.,* 875 P.2d at 918; *Harford County v. Harford Mut. Ins.,* 327 Md. 418, 610 A.2d 286, 295 (1992).

*See also Marathon Flint Oil v. American States Ins.,* 810 F.Supp. 850, 853 (E.D.Mich. 1992) ["the manifestation theory ... provides the same protection for the insurance company as a claims made policy without the reduction in premiums for the insured"].

Farmland's argument to adopt the manifestation rule simply stretches the policy language too far. We seriously doubt that a person not trained in the law or in the insurance business would construe the language, "loss or damage commencing ... [d]uring the policy period," as imposing a manifestation trigger. We will not rewrite this contract of insurance to exclude coverage on the basis of a manifestation theory. Construing the policy as a whole, and being faithful to its language in order to give effect to all of its provisions, we conclude that a real but undiscovered loss or damage, proved in retrospect to have commenced during the policy period, triggers coverage, irrespective of the time the loss or damage became manifest. *See American Home Prod. Corp.,* 565 F.Supp. at 1497.

■ Viewed in the light most favorable to Kief, the evidence suggests that some form of loss or damage to the grain bin commenced when the Farmland policies were in force. We do not hold that Farmland is obligated under its policies to pay for the property damage and business income loss incurred by Kief. We decide only that the trial court incorrectly held the loss or damage did not commence within the meaning of the policy until its manifestation or discovery on May 15, 1992.

The summary judgment is reversed and the case is remanded for further proceedings.

SANDSTROM, NEUMANN and LEVINE, JJ., and KIRK SMITH, District Judge, concur.

KIRK SMITH, District Judge, sitting in place of MESCHKE, J., disqualified.