752 A.2d 837 (2000)
332 N.J. Super. 85
WINDING HILLS CONDOMINIUM ASSOCIATION, INC., a nonprofit corporation of the State of New Jersey, Plaintiff-Appellant,
v.
NORTH AMERICAN SPECIALTY INSURANCE COMPANY, National Union Fire Insurance Company, Affiliated FM Insurance Company, State Farm Fire and Casualty Company, American Reliance Insurance Company, Saint Paul Fire and Marine Insurance Company, and Hanover Insurance Company, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 2000.
Decided June 16, 2000.
James M. McCarthy, Dover, for plaintiff-appellant (McCarthy & Jennerich, attorneys; Mr. McCarthy and Robert W. Jennerich, on the brief).
Donald G. Sweetman, Parsippany, for defendant-respondent National Union Fire Insurance Company (Gennet, Kallmann, Antin & Robinson, attorneys; Harry Robinson, III and Mark L. Antin, of counsel and on the brief).
Thomas P. Weidner, Princeton, for defendant-respondent State Farm Fire and Casualty Company (Jamieson, Moore, Peskin & Spicer, attorneys; Mr. Weidner, of counsel and on the brief; Charles M. Fisher, on the brief).
Anthony P. Pasquarelli, Rahway, for defendant-respondent American Reliance Insurance Company (Sweet, Pasquarelli & Wiebalk, attorneys; Mr. Pasquarelli, on the brief).
Steven J. Polansky, Moorestown, for defendant-respondent St. Paul Fire & Marine Insurance Company (Spector Gadon & Rosen, attorneys; Mr. Polansky, on the brief).
Gordon S. Graber, Morristown, for defendant-respondent Hanover Insurance Company (Sullivan & Graber, attorneys; Mr. Graber, on the brief).
Defendant-respondent North American Specialty Insurance Company did not file a brief.
Defendant-respondent Affiliated FM Insurance, did not file a brief.
Before Judges PRESSLER, KIMMELMAN and CIANCIA.
*838 The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff Winding Hills Condominium Association, Inc., brought this declaratory action against its successive first-party property damage insurers seeking recovery under the policies for the losses it sustained as a result of structural damage to the foundations of two of the six multiunit buildings of the condominium complex caused by defects in the on-site, subsurface drainage system. It appeals from a partial summary judgment dismissing the complaint, on limitations grounds, as to those of the insurers whose respective policy periods predated the policy term during which plaintiff discovered the problem and the loss. Plaintiff, having settled with the insurer on the risk when it discovered the loss, then appealed the summary judgment in favor of the other insurers. All parties agree that the dispositive issue is whether the manifest trigger or the continuous trigger determines the insurers' liability. We affirm, concluding that the manifest trigger applies where only first-party property damage coverage is involved.
The relevant facts are essentially undisputed. Plaintiff, as a condominium association, is required by statute to maintain "insurance against loss by fire or other casualties normally covered under broad-form fire and extended coverage insurance policies as written in this State, covering all common elements and all structural portions of the condominium property...." N.J.S.A. 46:8B-14(d). In compliance with this obligation, plaintiff obtained first-party insurance from these carriers for these periods: defendant Hanover Insurance Company for January 1986 to January 1987; defendant American Reliance Insurance Company for January 1987 to January 1988; defendant St. Paul Fire and Marine Insurance Company for January 1988 to January 1989; defendant State Farm Fire and Casualty Company for January 1989 to January 1990; defendant National Union Fire Insurance Company for January 1990 to May 1990; and defendant North American Specialty Insurance Company for May 1990 to May 1992. The policies of both St. Paul and National Union required suit on the policy to be brought against it by the insured within two years following the occurrence of the loss. The policies of the other four required suit to be brought within one year following occurrence of the loss.
It is also undisputed that in November 1989 plaintiff retained Trinity Dynamics Group, Inc. (Trinity), scientific and engineering consultants, for the purpose of evaluating its capital reserve funding and that during the course of that undertaking Trinity discovered structural deficiencies in two of the buildings, which it reported to plaintiff. Trinity was then retained by plaintiff in June 1990 to determine the extent and cause of the deficiencies. The extensive Trinity report was completed and delivered to plaintiff in January 1991. Basically, the report explained that deficiencies in the on-site drainage system had led to structural failures of the foundation footings of the two buildings. It also theorized that the compromise of the foundation footings could also be due to "improper backfill at the time of construction, subsurface soil erosion, or underground springs." In September 1991 plaintiff retained Becht Engineering Company, Inc. to remediate the foundation problem at an alleged cost in excess of $1,300,000. Becht also performed additional engineering studies, reporting to plaintiff in June 1993 of other "structural distress" caused primarily by water infiltration.
With respect to the involvement of the carriers, it is undisputed that plaintiff notified its then carrier North American of its claim in February 1991, and its prior carriers during April and May 1992. The carriers all disclaimed, and this declaratory judgment coverage action was commenced by complaint filed in February 1993. All defendants moved for summary judgment dismissing the complaint on limitations grounds among other asserted defenses.
*839 The motions of all but North American were granted.
In granting defendants' summary judgment motions, the court assumed that each of the policies provided first-party coverage for the loss. The essential question, of course, was when the loss occurred. Judge Donato reasoned that it could have been no later than the delivery to plaintiff of the January 1991 Trinity report, which adequately apprised plaintiff of the general scope and causes of the foundation compromise. Based on that date of loss and applying the manifest trigger thereto, Judge Donato concluded that as to the four defendants whose policies included a one-year limitations period, the February 1993 commencement of this action was too late. He also concluded that as to the two defendants whose policies provided for a two-year limitations period, neither policy applied since the loss had not occurred during the policy period. Of course, neither had it occurred during the policy period of the other four. After settling with North American, the only defendant whose summary judgment was denied, plaintiff appealed.
To begin with, we are satisfied from this record that in fixing the date of the Trinity's January 1991 report as the first date upon which plaintiff had knowledge of the loss and hence the date on which the loss was manifest, the court accorded plaintiff the full benefit of every permissible inference. While it might have been arguable that plaintiff should have been charged with notice of the loss as early as 1989 when Trinity first reported to it that there were foundation problems, we do not see how there can be any other conclusion respecting the effect of the 1991 report. Certainly the later Becht report, which uncovered additional problems, cannot reasonably impugn the extent of plaintiff's awareness of the essential difficulties in January 1991. Therefore, if Judge Donato was correct that the manifest trigger applied and hence that the loss occurred in January 1991, it is plain that the summary judgments were appropriately entered since the policy terms of all the insurers except North American had expired prior to the loss.
Plaintiff's argument is that it is not the manifest trigger but rather the continuous loss trigger that should have been applied and therefore the loss occurred to some extent in each of the policy terms. We agree that if the continuous trigger were to apply, all the insurers would be held in, but for limitations provisions, since patently the subsurface assault on the foundation must have begun by January 1987, the commencement of the first policy period here in question, in view of the fact that the buildings had been constructed between 1969 and 1974. We reject, however, the thesis that the continuous trigger rule applies to first-party coverage.
The difference between the two rules was clearly explained in Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437, 650 A.2d 974 (1994), in which the Supreme Court first applied the continuous trigger rule determining which liability carriers owed a defense and indemnity to the insured, an asbestos manufacturer sued by persons claiming to have sustained personal injury by reason of their inhalation over a substantial period of time of asbestos fibers in the insured's products. Noting that as a general rule, the time of the occurrence of an accident triggering coverage under the liability policy is when the claimant is actually damaged rather than when the wrongful act is committed, id. at 452, 650 A.2d 974, the Court's inquiry focused on when the actual damage occurs, that is, while the resultant damage to the lungs is progressing, albeit unknown to the claimant, or when it first becomes manifest to the plaintiff that his lungs have been damaged. Based on considerations of public policy respecting the public health interest in mass exposure toxic tort cases and the scientific uncertainty as to "when a toxic substance clicks on a switch that alters irrevocably the composition of *840 the body," id. at 458, 650 A.2d 974, the Court opted for the continuous trigger, holding that the injury occurs continuously from exposure to the asbestos fibers to manifestation of the resultant disease. Thus,
when progressive indivisible injury or damage results from exposure to injurious conditions for which civil liability may be imposed, courts may reasonably treat the progressive injury or damage as an occurrence within each of the years of a CGL policy. That is the continuous-trigger theory for activating the insurers' obligation to respond under the policies. [Id. at 478-479, 650 A.2d 974.]
An inevitable corollary of requiring the sharing of the indemnification obligation by all carriers who are on the risk at any time from the date of exposure to the date of manifestation is the maximization of coverage available for the protection of the public. We are aware that in Owens-Illinois the Court made clear "[a] rule of law premised on nothing more than the result-oriented goal of maximizing coverage has been described as `judicial legislation.' "Id. at 452, 650 A.2d 974. (Emphasis added.) Nevertheless it is also clear that the law's solicitousness for victims of mass toxic torts and other environmental contamination is entirely consistent with choosing that conceptually viable trigger theory affording the greatest ultimate redress.
In Carter-Wallace v. Admiral Ins. Co., 154 N.J. 312, 321, 712 A.2d 1116 (1998), the Supreme Court extended the Owens-Illinois continuous-trigger rule to third-party progressive environmental property damage claims, resulting in the holding in of all carriers on the risk from the time of the commencement of the environmental contamination until its manifestation. And our courts have consistently applied the continuous-trigger rule in determining liability coverage in respect of a variety of third-party environmental pollution and toxic-tort property damage claims. See Universal-Rundle Corp. v. Commercial Union Ins. Co., 319 N.J.Super. 223, 243, 725 A.2d 76 (App.Div.), certif. denied, 161 N.J. 149, 735 A.2d 574 (1999); Sayre v. Insurance Co. of North Amer., 305 N.J.Super. 209, 211-212, 701 A.2d 1311 (App.Div.1997); Astro Pak Corp. v. Fireman's Fund Ins. Co., 284 N.J.Super. 491, 499, 665 A.2d 1113 (App.Div.), certif. denied, 143 N.J. 323, 670 A.2d 1065 (1995).
No court in this state has, however, applied the continuous-trigger rule rather than the manifest-trigger rule in first-party property damage claims, and that, of course, is the basic issue before us. We conclude that the manifest-trigger rule remains appropriate in first-party property damage claims for a variety of reasons. First, unlike the situation obtaining in liability coverage, there are no public rights to be concerned about and no right of the public to redress. The interests involved are solely between the insured and the insurer, and, again unlike the situation in liability coverage, the insured has the ability to assure his full protection against his finite potential financial loss simply by obtaining, in each policy year, coverage for the full actual cash value of his property. Thus, his loss because of damage to the property can be fully compensated for whenever the loss becomes manifest even if it results from a latent progressive condition.
We also have no doubt that the manifest-trigger rule in this situation avoids the inevitable complex problems of apportionment of liability among successive carriers. Clearly, the incurring of such problems adds significantly to litigation costs and eventually to premium costs. Moreover, we are confident that all premiums would be substantially increased were the carrier's risk to continue indefinitely beyond the policy period. And because the property owner can fully protect himself in each policy period, we see no offsetting advantage to the insured or to the public at large were we to apply the continuoustrigger rule to first-party property coverage.
*841 Our adherence to the manifest-trigger rule in first-party insurance cases while applying the continuous-trigger rule in third-party coverage cases comports, moreover, with the choice made by the courts of sister states that have considered this precise question. Thus, in Prudential-LMI Com. Ins. v. Superior Court, 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230, 1243 (1990), the California Supreme Court began its analysis by noting "the important distinction that must be made in a causation analysis between first-party property damage cases and third-party liability cases." The court, then accepting the propriety of the continuous-trigger rule in third-party liability cases, reasoned as follows in applying the manifest-trigger rule to first-party property claims:
[w]e conclude that in first party progressive property loss cases, when, as in the present case, the loss occurs over several policy periods and is not discovered until several years after it commences, the manifestation rule applies. As stated above, prior to the manifestation of damage, the loss is still a contingency under the policy and the insured has not suffered a compensable loss. Once the loss is manifested, however, the risk is no longer contingent; rather an event has occurred that triggers indemnity unless such event is specifically excluded under the policy terms. Correspondingly, in conformity with the loss-in-progress rule, insurers whose policy terms commence after initial manifestation of the loss are not responsible for any potential claim relating to the previously discovered and manifested loss. Under this rule, the reasonable expectations of the insureds are met because they look to their present carrier for coverage. At the same time the underwriting practices of the insurer can be made predictable because the insurer is not liable for a loss once its contract with the insured ends unless the manifestation of loss occurred during its contract term.
[Id. 274 Cal.Rptr. 387, 798 P.2d at 1246] (Citations omitted.)
We fully endorse that reasoning as a matter both of formal legal analysis and public policy. See also Bostick v. ITT Hartford Group, Inc., 56 F.Supp.2d 580 (E.D.Pa. 1999) (applying Pennsylvania law); Jackson v. State Farm Fire and Cas. Co., 108 Nev. 504, 835 P.2d 786 (1992); Kief Farmers Coop. Elevator Co. v. Farmland Mut. Ins. Co., 534 N.W.2d 28 (N.D.1995).
Since plaintiff's loss was manifested in January 1991, its insurers whose policy terms had expired prior to that date have no coverage obligation.
The summary judgment appealed from is affirmed.