SOCIETY INSURANCE, a Mutual Company, f/k/a
Threshermen's Mutual Insurance Company, Plaintiff-
Appellant,†

v.

TOWN OF FRANKLIN, a Municipal Corporation, and
Lemberger Sites Remediation Group, an
Unincorporated Association, Defendants-
Respondents.

Court of Appeals

*No. 98–3409. Submitted on briefs December 17,
1999.—Decided January 26, 2000.*

## 2000 WI App 35

(Also reported in 607 N.W.2d 342.)

†Petition to review granted.

207

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James W. Mohr, Jr.* of *Mohr & Anderson, S.C.,* of Hartford.

On behalf of the defendants-respondents Town of Franklin, the cause was submitted on the brief of *Thomas M. Pyper* and *Jeanne M. Armstrong* of *Whyte Hirschboeck Dudek, S.C.,* of Madison.

On behalf of the defendants-respondents Lemberger Sites Remediation Group, the cause was submitted on the brief of *Mary K. Braza* of *Foley & Lardner* of Milwaukee.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. BROWN, P.J. The question presented is whether an insured may aggregate coverage under multiple annual comprehensive general liability (CGL) policies for an ongoing occurrence that causes continu-

ous property damage for a period spanning several years. The trial court determined that the insurer was on the risk for maximum liability for each year that a policy was in force. Thus, the insured municipality could stack coverage under the various annual policies for sums paid to clean up environmental contamination resulting from the operation of a municipal dump. We agree with the trial court. The language of the policies themselves, along with case law, demands that result. While all damages resulted from one ongoing occurrence, that occurrence gave rise to property damage each year, thus triggering coverage under each of the various policies. We do agree with the insurer, however, that the trial court should have ruled on the insurer's claim that the last policy had an absolute pollution exclusion clause rather than deem the issue waived. We affirm the trial court judgment except for that portion concerning the absolute pollution exclusion and remand for further fact-finding on the exclusion.

¶ 2. This case is about who should pay for the cleanup of the Lemberger Sites, contaminated land that used to be a town dump. The Town of Franklin used the sites as an open dump from 1940 to 1968 and subsequently as a licensed landfill until 1976. Around 1980, local residents complained that contaminated liquid was seeping onto their property. As a result, the sites were investigated and added to the National Priorities List of the United States Environmental Protection Agency (EPA). At that point, the EPA became the lead regulatory agency responsible for the proper closure and remediation of the sites. The EPA and the Wisconsin Department of Natural Resources sued several potentially responsible parties in federal court for the cost of the cleanup. Some of the parties

entered into consent agreements with the EPA. Under the agreements, subsets of the defendants accepted responsibility for various aspects of the cleanup. The Lemberger Sites Remediation Group (LSRG), a defendant in the present case, is a group of entities that took on cleanup costs under the consent agreement. The LSRG is the plaintiff in a federal action seeking to recoup from other entities potentially responsible for the contamination what it has spent and will spend cleaning up the site. Among the defendants in that case is the Town of Franklin.

¶ 3. The Town had purchased consecutive one-year insurance policies from Society Insurance from 1972 until 1986. From 1972 to 1982, the policies had $10,000 per occurrence liability limits for property damage. From 1983 to 1987, the limits were $100,000. When LSRG and the EPA sued the Town, the Town tendered the defense of both actions to Society, which in turn sought a judgment declaring that it had no duty to defend or indemnify. The trial court granted Society partial summary judgment with respect to the EPA suit, finding it had no duty to defend or indemnify in that case. However, the trial court found that Society did have a duty to defend the Town in the LSRG suit. Society then moved for declaratory judgment regarding coverage in the LSRG suit, asking the court to declare that the complaint alleged only one occurrence of property damage, that the occurrence took place in 1981 and that $10,000 was Society's maximum liability to the Town in the LSRG suit.

¶ 4. The trial court denied Society's motion, ruling that the complaint alleged one continuous occurrence that triggered each of the policies issued from 1972 through 1986. Thus, Society was obliged to indemnify the Town for the full limit of liability under

211

each of the policies. In other words, the trial court ruled that Society could aggregate coverage under the various consecutive policies—it could horizontally stack its coverage. In response to Society's assertion that the 1986 policy should not be included in the stack because it contained an absolute pollution exclusion, the trial court ruled that Society had waived that issue as it was "not raised in the original motions."

¶ 5.    Determining whether a given set of facts gives rise to coverage under an insurance policy is a question of law we review de novo. *See Cardinal v. Leader Nat'l Ins. Co.*, 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992). The language of the policy, which is a contract negotiated by the insurer and insured, determines the extent of coverage. *See State Farm Mut. Auto. Ins. Co. v. Continental Cas. Co.*, 174 Wis. 2d 434, 442, 498 N.W.2d 247 (Ct. App. 1993). When interpreting an insurance policy, any ambiguity should be construed in favor of coverage. *See Cardinal*, 166 Wis. 2d at 382.

¶ 6.    We first set forth the relevant policy language. Under the policies, Society agrees to "pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of . . . **property damage** to which this insurance applies, caused by an **occurrence**." The policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**." "Property damage" is defined as "physical injury to or destruction of tangible property which occurs during the policy period." In defining the extent of coverage, the policy states: "For the purpose of determining the limit of the company's liability, all **bodily injury** and

**property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence**." Finally: "The total liability of the company for all damages because of all **property damage** sustained . . . as a result of any one **occurrence** shall not exceed the limit of **property damage** liability stated in the schedule as applicable to '**each occurrence**.' "

¶ 7.   The parties do not dispute that LSRG's complaint against the Town alleges one continuous occurrence. Rather, they disagree on the limit of Society's liability for damages caused by the ongoing occurrence. Society asserts that because there is only one occurrence, it is on the risk up to only one policy's limit of liability. The policy limits liability that is the result of any one occurrence to the "limit of **property damage** liability . . . as applicable to 'each occurrence.' " Society points out that the fact that a policy is triggered only means that there is potential coverage under that policy; it does not mean that the insurer must pay—limitations or exclusions may restrict liability under the policy. Here, liability is limited because there was only one occurrence. The Town responds that "where there is a continuing occurrence, all insurance policies in effect while the property damage is taking place are triggered." Furthermore, LSRG and the Town argue, coverage is keyed to property damage and that phrase is defined in terms of the policy period. Thus, Society must provide one policy limit's worth of coverage for each policy period in which property damage occurred. The trial court agreed with LSRG and the Town, concluding that "the continuous-injury trigger of coverage applies" and that "the limits of liability for

each policy triggered are available to the Town for indemnification."

■

¶ 8. Before addressing the parties' arguments, we pause to explain the different theories of "triggering" coverage. A policy is triggered if events occur during the policy period which give rise to a duty to defend. *See* Michael G. Doherty, Comment, *Allocating Progressive Injury Liability Among Successive Insurance Policies*, 64 U. CHI. L. REV. 257, 261 (1997). In other words, the triggering of a policy means that there is potential coverage under that policy. An injury occurring during the policy period triggers coverage. In cases involving ongoing exposure to a harmful substance, however, the exact date of harm is uncertain and the harm often occurs over several policy periods. To deal with the triggering question in these cases, courts have developed four different theories for setting the date of injury.

> The "exposure" theory fixes the date of injury as the date on which the injury-producing agent first contacted the body or the date on which pollution began. The "manifestation" theory holds that the compensable injury does not occur until it manifests itself in the form of a diagnosable disease or ascertainable property damage. The "continuous trigger" theory, also known as the "triple trigger" theory, provides that the injury occurs continuously from exposure until manifestation. Finally, the "injury-in-fact" theory allows the finder of fact to place the injury at any point in time that the effects of exposure resulted in actual and compensable injury.

*Id.* at 262 (citations omitted). The majority of courts that have considered the issue have adopted the continuous trigger theory. *See id.* Wisconsin is in accord,

as this court has endorsed the continuous trigger theory. *See Wisconsin Elec. Power Co. v. California Union Ins. Co.*, 142 Wis. 2d 673, 681, 419 N.W.2d 255 (Ct. App. 1987).

¶ 9.  Given *Wisconsin Electric*'s approval of the continuous trigger theory for setting the date of injury, we agree with LSRG and the Town that all policies in effect while the occurrence was ongoing are triggered. The policy language mandates this result. In each policy, Society agreed to pay sums the insured becomes legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence. The policy's definition of occurrence includes "continuous or repeated exposure to conditions, which results in . . . property damage." The policy defines property damage as physical injury to property that occurs during the policy period. Here, while there was only one ongoing occurrence, there was continual, recurring damage to the property. Contamination took place during each policy period over the years 1972 to 1987 because during that time pollutants were seeping into the ground. Thus, each policy is available. It is the time of the injury, not the time of the occurrence, that determines which policies are triggered. This is clear from the language of the policy.

¶ 10.  Not only does the policy language mandate this result, case law from Wisconsin and other jurisdictions supports the conclusion that horizontal stacking is appropriate. For example, in *State Farm*, this court concluded that all seven automobile policies afforded coverage to the insured for his accident while driving a "nonowned vehicle." *See State Farm*, 174 Wis. 2d at 441–42. In explaining why stacking was appropriate, the court noted that the insured had paid seven sepa-

rate premiums in exchange for seven discrete promises of coverage. Each premium was calculated to compensate the insurer for the risk. Thus, the insured could reap the benefit of each distinct promise. Due to the multiple contracts between the parties, stacking of coverage was proper.

¶ 11.   Here, as in *State Farm*, the insured should get the full benefit of the coverage it purchased from the insurer. The Town paid Society a premium each year for coverage from liability resulting from property damage during the policy period. Society calculated its premium to compensate it for the risk it undertook for each policy year. Because property damage occurred each year, Society must make good on each policy. We acknowledge that *State Farm* dealt with a more traditional type of occurrence—a car accident—in which property damage was immediate. However, we find the *State Farm* court's explanation of why stacking was permissible persuasive in this case as well.

¶ 12.   Society relies on *Keene Corp. v. Insurance Co.*, 667 F.2d 1034 (D.C. Cir. 1981), *cited with approval in Wisconsin Electric*, 142 Wis. 2d at 679–80, stating that *Keene* "specifically rejected the argument that multiple insurance policies may be stacked." In *Keene*, several different insurance companies issued CGL policies to Keene for a period spanning several years. Keene manufactured insulation products that contained asbestos and was named as a codefendant in over 6000 lawsuits alleging injury caused by exposure to the asbestos products. Keene tendered the defense to its insurers, who denied coverage. The *Keene* court adopted the "continuous trigger" approach, holding that coverage was triggered by the initial exposure to the asbestos, the subsequent development of the disease and the ultimate manifestation of symptoms. *See*

*id.* at 1047. Keene argued that this meant that it could aggregate successive policies to cover each injury. The court rejected this horizontal stacking, stating that "only one policy's limits can apply to *each injury*." *Id.* at 1049 (emphasis added). Society urges us to adopt this approach in the present case.

¶ 13. This court approved of *Keene's* adoption of the continuous trigger approach for cases involving ongoing injury in *Wisconsin Electric*. There, we held that one continuous occurrence that caused property damage over a twelve-year period triggered coverage under all the policies in effect throughout. *See Wisconsin Electric*, 142 Wis. 2d at 681. But *Wisconsin Electric* did not touch upon the stacking issue presented here. And neither did *Keene*. In *Keene*, there were multiple claims of bodily injury (over 6000). The *Keene* court held that "only one policy's limits can apply to each injury." *Keene*, 667 F.2d at 1049. Our holding is consistent with this statement. Property damage during any given year is covered by the policy in effect that year—one policy's limits apply for each year in which property damage took place. Furthermore, in addition to the factual differences between *Keene* and the present case, *Keene's* rationale regarding the stacking issue is at odds with Wisconsin law. The *Keene* court reasoned that "because we hold . . . that only one policy's limits of liability may apply to one injury, an insured who has purchased several policies that cover an injury will only be able to collect under one of those policies, even though he paid for several." *Id.* (footnote omitted). This statement does not jibe with our holding in *State Farm*, discussed above. For these reasons, *Keene* does not persuade us that the Town cannot reap

the benefits of its several policies by aggregating them.[1]

¶ 14.  We now turn to the trial court's ruling that Society waived its chance to contest coverage under the 1986 policy, which contained the absolute pollution exclusion. Society mentioned the exclusion in both its initial and reply trial court briefs. Society's Brief in Support of Motion for Declaratory Judgment stated: "The final policy, running from April 27, 1986 through April 27, 1987 . . . had the 'absolute' pollution exclusion." That statement was followed by a citation to *Production Stamping Corp. v. Maryland Casualty Co.*, 199 Wis. 2d 322, 331, 544 N.W.2d 584 (Ct. App. 1996), which upheld the validity of the absolute pollution exclusion. At an October 5 hearing on the motion, counsel for Society brought the issue to the trial court's attention, stating that he felt *Production Stamping* controlled. The trial court responded that it was "not prepared to address that issue," that "it was not raised in the initial brief" and that it did not "consider that to be an adequately briefed issue." A few days later, when the trial court issued its decision, it stated: "I'm not going to address the pollution exclusion issue. That was not raised in the original motions, it was not briefed per se. . . . [I]f that becomes an issue at some point, it can be raised. But I'm not going to be addressing that this afternoon." Finally, at a November 13 telephonic motion hearing, counsel for Society again raised the exclusion, noting that the trial court had

---

[1] Because one insurer issued all the policies here, we need not address how liability would be allocated were there multiple insurers. *See, e.g.,* Garrett G. Gillespie, Note, *The Allocation of Coverage Responsibility Among Multiple Triggered Commercial General Liability Policies in Environmental Cases: Life After Owens-Illinois*, 15 VA. ENVTL. L.J. 525 (1996).

declined to address its application and stating, "I am going to the court of appeals on that." Later in the same conversation, the trial court responded: "[J]ust so that if you want the court of appeals to hear this issue . . . I want the record to be clear what was before this Court . . . . I want the court of appeals aware of why the Court declined to consider what it considered to be inadequately raised or briefed argument."

¶ 15.  To avoid waiver, an issue must be sufficiently flagged for the trial court to be made aware that the party requests a ruling on the issue. *See Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 790, 501 N.W.2d 788 (1993). While Society's reference to the pollution exclusion in its brief is short, it should have been enough to alert the Town and LSRG that Society contested coverage under the 1986 policy. Yet, neither the Town nor LSRG addressed the issue in its response brief. In its reply brief, Society noted that "[n]o one has disputed that the 'absolute' pollution exclusion bars coverage beginning April 27, 1986." In a joint surreply brief, the Town and LSRG state that "Society has not brought a motion . . . arguing that the pollution exclusion precludes coverage." But Society raised the issue in its brief supporting its motion. Our review of the record leads us to conclude that the issue was adequately raised before the trial court. We thus reverse that part of the judgment including the 1986 policy with the others and remand for a determination whether the pollution exclusion precludes coverage under that policy.

¶ 16.  Finally, Society argues that the property damage occurred in 1981 or earlier and thus only policies issued in 1981 or before apply. However, because

we have concluded that the contamination was one ongoing occurrence, it would make no sense for us, or the trial court, to attempt to pinpoint when the occurrence happened. In its own words, "Society contended that the policy in effect when the contamination was first discovered is the policy that should respond in damages." This is known as the "manifestation" theory of coverage. *See, e.g., Keene,* 667 F.2d at 1042–43. Wisconsin, however, follows the continuous trigger theory of coverage. *See Wisconsin Elec.,* 142 Wis. 2d at 681. Thus, policies in effect from the time the contamination began up until its remediation are all triggered. *See id.* ("[T]he 'occurrence' triggering coverage . . . began with the installation of the power supply in 1970 and continued uninterrupted until the problem was resolved in 1982."). The trial court was correct in declining to pinpoint the date of the occurrence.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.