# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1232

CRAIG MILLER and NANCY MILLER,

*Plaintiffs-Appellees*,

*v.*

SAFECO INSURANCE COMPANY OF AMERICA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06-C-1021—**William E. Callahan, Jr.**, *Magistrate Judge.*

ARGUED SEPTEMBER 21, 2011—DECIDED JUNE 25, 2012

Before EASTERBROOK, *Chief Judge*, and TINDER and HAMILTON, *Circuit Judges.*

TINDER, *Circuit Judge.* Safeco Insurance Company of America issued an insurance policy on a home purchased by Craig and Nancy Miller. After the Millers discovered extensive water and mold damage on the property, they filed a claim for the loss. Safeco denied the claim and the Millers sued. The district court found that the policy covered the loss, that the exclusions didn't apply, and Safeco acted in bad faith. We affirm.

### I. Background

The Millers first saw the property as potential buyers in 2003. Photographs from this time depict staining on the exterior stucco walls. A 2004 inspection for other potential buyers revealed serious defects with the roof flashings and stucco sidings and recommended a mold inspection. When the home didn't sell, the owner made cosmetic changes to the property and put it back on the market. The Millers revisited in 2005 and made an offer. In a real estate condition report, the seller indicated that she was aware of various defects but did not disclose faulty roof flashings or a stucco veneer system or the possible presence of mold or water problems indicated in the 2004 inspection report. In fact, the seller expressly stated that she wasn't aware of any mold or water issues.

A home inspection report performed for the Millers identified various defects including a "soft spot" on the roof and recommended follow-up by a specialist. The report also said that the stucco's finish color was uneven and stained, that the wood siding could be re-stained, that paint on the wood fascia board under the gutters was peeling and experienced some water damage, that water had damaged a wood sill, and that there was possible water damage to a wood window frame. The report recommended repairing a torn membrane on the roof and replacing foggy skylights above the living room and kitchen sink because they had lost their vacuum seal. The inspector also found some water damage in the upper study and at the skylights above

the kitchen sink and suggested it was "possibly from flat roof leaks." But the report advised that the exterior walls, chimney, grass roof, flashings, floor joists/beams and columns, and garage walls and floor appeared "serviceable." The Millers retained a specialist for the soft spot and amended their offer to reflect the defects. The specialist didn't indicate that the soft spot was a significant concern and advised that repairing it would cost no more than $1,500.

Safeco issued the Millers a homeowner's policy on the property on June 30, 2005. The policy went into effect the next day when the Millers closed on the property. The policy covered all "accidental direct physical loss to property," unless limited or excluded, "occurring during the policy period." But the Millers didn't see the policy's terms until Safeco mailed them a copy of the policy at the end of July.

Before receiving the policy and sometime after beginning renovation of the home on July 5, the Millers discovered severe inner wall water leaks and significant water infiltration on three of the home's exterior walls. A mold specialist found that the home had "numerous construction deficiencies that existed long before" the Millers purchased the home that "resulted in chronic water intrusion" damaging the interior finished walls, insulation, external plywood sheathing, and other aspects of the structure. The Millers filed a claim with Safeco for the water damage, mold, and lost use of the home. Safeco assigned a claim representative to investigate, sent a field inspector to the property to inspect, and solicited a legal opinion on coverage from an attorney.

The lawyer opined that the policy may not cover the damage because of the known loss doctrine and the policy's exclusions and limitations. Safeco decided to deny the claim. Safeco wrote the Millers that their pre-purchase inspection "report confirmed multiple areas of water damage that were in need of attention" and that the loss thus qualified as a preexisting condition "that occurred outside of the policy period."

The Millers sued Safeco in federal court on diversity jurisdiction for breach of the insurance contract and bad faith. On the Millers' motion for summary judgment, the court held that Safeco was precluded from raising the policy's exclusions because it didn't notify the Millers of the exclusions until after they discovered the damage. The court however found questions of fact on whether the policy covered the loss. After holding a bench trial, the court found that the policy covered the loss and awarded $485,100.64 in damages. The court found after another bench trial, this time on the bad faith claim, that Safeco lacked a reasonable basis for denial and that Safeco demonstrated a reckless disregard for its lack of a reasonable basis thus entitling the Millers to damages resulting from Safeco's bad faith, but the court denied the Millers' request for punitive damages. The court later granted the Millers' motion to amend the judgment to reflect additional prejudgment interest.

## II. Analysis

Because Safeco's appeal does not contest the district court's factual findings, and challenges only its legal

conclusions, our review is de novo. *E.g.*, *Johnson v. West*, 218 F.3d 725, 729 (7th Cir. 2000). The parties agree Wisconsin law applies so we use Wisconsin's three-step process to determine coverage: (1) the policy must first make an initial grant of coverage; and (2) if so, we look at whether an exclusion precludes coverage; and (3) if an exclusion applies, we look to see whether an exception reinstates coverage. *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 73 (Wis. 2004). We construe the policy as it "would be understood by a reasonable person in the" Millers' position but we will not interpret the policy to provide coverage for risks Safeco did not contemplate or underwrite and for which it did not receive premiums. *Id.*

## A. Coverage

The Safeco policy covers any "accidental direct physical loss" to the Millers' home. Sep. Appx. at 36. The policy does not define "accidental," but Wisconsin's Supreme Court, when faced with the undefined term "accident" in a policy, turned to various dictionaries to interpret "accident" as "an event or condition occurring by chance or arising from unknown or remote causes" or "an event which takes place without one's foresight or expectation." *Am. Girl*, 673 N.W.2d at 76. An unexpected "result" is not an accident unless "the means or cause" is "accidental." *Id.* Thus, the court held, a loss is accidental when neither "the cause nor the harm was intended, anticipated, or expected." *Id.* By this definition, the district court did not err in finding

that the loss was accidental because the parties to the insurance contract did not intend, anticipate, or expect the means or the cause of the direct physical loss to the property.

Safeco argues that the policy did not cover the loss because of the lack of a fortuitous extraneous happening during the policy period. *See Glassner v. Detroit Fire & Marine Ins. Co.*, 127 N.W.2d 761, 764 (Wis. 1964) ("An 'all-risk' policy is a promise to pay for loss caused by a fortuitous and extraneous happening, but it is not a promise to pay for loss or damage which is almost certain to happen because of the nature and inherent qualities of the property."); *Kraemer Bros., Inc. v. U.S. Fire Ins. Co.*, 278 N.W.2d 857, 861 (Wis. 1979) (noting that "a defect in the design and construction of insured property is inherent in that property, rather than an 'external cause,' and therefore" not included within the policy). Safeco believes that because the home's inherent nature (a bad construction) caused the damage, the loss wasn't fortuitous. We noted in *Lucterhand v. Granite Microsystems, Inc.*, that the term "accident" reflects the fortuity principle, 564 F.3d 809, 812 (7th Cir. 2009), but this just means that when a damage's cause is unexpected, and therefore accidental, it is also fortuitous, *id.* at 812-13. And as the district court found, neither party knew about or contemplated the damage's cause before the policy's issuance. *See Am. Girl*, 673 N.W.2d at 76 (finding coverage because "[n]either the cause nor the harm was intended, anticipated, or expected"); *Wis. Elec. Power Co. v. Cal. Union Ins. Co.*, 419 N.W.2d 255, 258 (Wis. Ct. App. 1987) (a "latent injury, unknown and

unknowable" when coverage began "must, at least, be covered by an insurer on the risk at the time it manifests" because that satisfies insureds' "very reasonable expectations" (quoting *Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034, 1044 (D.C. Cir. 1981))).

Safeco next argues that the district court wrongly used the continuous trigger theory to determine the date of harm based on the policy's language limiting coverage to "losses occurring during the policy period." Wisconsin applies, along with the majority of courts, the continuous trigger theory to determine the date of injury in cases where the exact date of harm is uncertain and potentially occurring over several policy periods. *See Soc'y Ins. v. Town of Franklin*, 607 N.W.2d 342, 346 (Wis. Ct. App. 2000) (adopting the continuous trigger theory to find that an injury "occurs continuously from exposure until manifestation" (quoting Michael G. Doherty, *Allocating Progressive Injury Liability Among Successive Insurance Policies*, 64 U. Chi. L. Rev. 257, 261 (1997))). Safeco asks us to carve out an exception and hold, despite a dearth of Wisconsin caselaw, that the continuous trigger theory should only apply in third-party coverage cases because the questions presented in third-party cases (e.g., which policy should defend and indemnify against environmental contamination claims spanning multiple policy periods?) aren't present in first-party property damage claims. We aren't inclined to adopt an approach that lacks support from Wisconsin's caselaw, but even if we did, Safeco's cases in support of its position adopted a manifestation theory for determining liability when a latent progressive condition

causes property damage. *See Winding Hills Condo. Ass'n v. N. Am. Specialty Ins. Co.*, 752 A.2d 837, 840 (N.J. Super. Ct. App. Div. 2000); *Prudential-LMI Com. Ins. v. Superior Court*, 798 P.2d 1230, 1246-47 (Cal. 1990). Given the finding that the loss manifested during the policy period, the result would be the same.

Safeco maintains that because the district court found that the property was a total loss when the Millers discovered the problem, the water leakage and mold growth couldn't have caused any direct physical loss to the property during the policy period. But the point at which the property became a total loss mattered for determining whether the Millers took appropriate steps to mitigate the damages, not whether the "accidental direct physical loss to" the home occurred "during the policy period." That the degree of damage put the home beyond repair doesn't mean water leakage wasn't still causing further direct physical loss to the property during the policy period.

Safeco asks us to adopt the approach in *Leafland Group-II, Montgomery Towers Ltd. Partnership v. Insurance Co. of North America* to determine coverage. 881 P.2d 26, 28-29 (N.M. 1994) (no coverage for a property's diminished value caused by asbestos because property's value diminished before the policy went into effect). Given that Wisconsin law provides a straightforward path for interpreting this policy, we won't clutter the matter by discussing another jurisdiction's approach to different policies and claims.

## B. Exclusions

Safeco argues that the district court erred in finding that its failure to inform the Millers of the exclusions before they discovered the damage precluded Safeco from raising the exclusions. Wisconsin law provides that an insurer cannot rely on a policy's exclusions when it fails to inform the insured of those terms. *Kozlik v. Gulf Ins. Co.*, 673 N.W.2d 343, 348 (Wis. Ct. App. 2003). If an insurer does "not provide the insured with a copy of the policy or some other documentation of its terms," the "insurer may not deny coverage based on an exclusion in the policy." *Id.* Allowing an insurer to take premiums "and then deny liability based on an exclusion of which the insured was not aware because the insurance company had not informed him or her of the exclusion or given him or her the means to ascertain its existence" would be unjust. *Id.* at 349.

Safeco argues that Wisconsin's prohibition against creating coverage through estoppel implicitly overrides this principle. *See Shannon v. Shannon*, 442 N.W.2d 25, 33-34 (Wis. 1989) (insurer cannot waive coverage clauses via litigation conduct). But Wisconsin's rule that an insurer cannot preclude coverage based on exclusions unknown to the insured doesn't rest on estoppel. Safeco's failure to provide the Millers with the exclusions goes to the legal question of whether the exclusions were part of the agreement in the first place. Safeco failed to tell the Millers about the exclusions—whether by delivering the policy or by any other means—until after the Millers discovered the damage. And just as an

insurer couldn't amend a policy's terms to exclude a loss after the insured discovers that loss, an insurer cannot refuse coverage by pointing to an exclusion that the insured didn't know about until after the insured discovered the loss. *Gross v. Lloyds of London Ins. Co.*, 358 N.W.2d 266, 271 (Wis. 1984) (insurer's failure to provide insured with "exclusionary language until after the accident" meant insurer couldn't rely on it); *Roeske v. Diefenbach*, 249 N.W.2d 555, 559-60 (Wis. 1977) (insurance contract limited to terms "expressed and agreed upon by" the parties; if insurer wants "to incorporate the provisions of their usual policies . . . such provisions must be specifically brought to" insured's attention). Safeco cannot deny coverage based on exclusions it failed to tell the Millers about until after they discovered the damage.

## C. Bad Faith

For their bad faith claim, the Millers had to show an "absence of a reasonable basis for denying benefits" and "the defendant's knowledge or reckless disregard of the lack of a reasonable basis." *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 376 (Wis. 1978). Showing an absence of a reasonable basis is an objective test (that is "a reasonable insurer could not have denied" the claim), whereas showing reckless disregard is a subjective test. *Weiss v. United Fire & Cas. Co.*, 541 N.W.2d 753, 757, 762 (Wis. 1995).

Safeco doesn't ask us to revisit the district court's specific factual findings leading to its conclusion that the company's review of the Millers' claim was cursory

at best, that it lacked a reasonable basis for denying the Millers' claim, and that it demonstrated a reckless disregard for its lack of a reasonable basis, *see* Short Appx. at 53, and the Millers do not appeal the denial of their request for punitive damages, *id.* at 60-61. Rather, Safeco argues that had it been allowed to rely on the exclusions, there wouldn't have been coverage and without a finding of coverage, Wisconsin law holds that there can be no bad faith. *See Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 798 N.W.2d 467, 482 (Wis. 2011). But as stated above, Safeco's failure to provide the policy's terms to the Millers before they discovered the damage meant the exclusions were not part of the policy when the Millers discovered the damage. *See* Part II.B. Safeco cannot now avoid a bad faith finding based on exclusions that were not part of the policy when the Millers discovered the damage.

Safeco maintains that a bad faith finding was improper because the coverage issue was at least "fairly debatable." *See Mowry v. Badger State Mut. Cas. Co.*, 385 N.W.2d 171, 181-82 (Wis. 1986) (reversing on bad faith because insurer properly investigated and didn't recklessly ignore or disregard important facts). But Safeco's basis for denial rested, as the district court found after a three-day trial, on rather dubious justifications. Short Appx. at 53. First, Safeco asserted that the damage was a preexisting condition the Millers knew about, precluding coverage under the known loss doctrine. No one contests the finding that the damage was in existence before closing. Yet, as found below, there was no evidence the Millers knew about it until after closing. The Millers'

inspector identified water issues but nothing alerting to problems with the "water infiltration" that caused the damage; a closer look would have revealed this "important" distinction. *Id.* at 45-46. Second, Safeco pointed to the four months between discovery and the Millers' filing of their claim as justifying denial. But the Millers didn't sit on their claim; rather, they took this time to prepare their claim by contacting an attorney and having professionals assess the damage. Critically, Safeco couldn't explain how the delay caused it prejudice. *Id.* at 49-50. Third, Safeco believed that the Millers failed to protect the home after discovery. But the Millers did what they could to mitigate the damages and even if they could have done more, the home was already a total loss. Safeco also never explained, either in its claims file or at trial, what the Millers could have done differently. *Id.* at 50. Safeco also pointed to the policy's exclusions as a basis for denial. But Safeco never showed where it ever actually relied on the exclusions. Safeco "cluttered" the claim file with language from the exclusions but that didn't mean it reasonably investigated or considered their applicability. Indeed, the court considered it "rather iniquitous for Safeco . . . to rely upon bases that were not fairly considered or reasonably asserted as reasons for denying the" claim. *Id.* at 51-52. Given that Safeco does not show where the district court erred in debunking its reasons for denying the Millers' claim, we have no basis for finding the coverage issue fairly debatable.

**D.  Reconsideration**

Safeco argues that the district court abused its discretion in allowing the Millers to use a Rule 59(e) motion to advance a new argument about when the interest calculation should begin. Courts may grant Rule 59(e) motions "to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996). This rule "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). But such motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (internal citations omitted). We entrust Rule 59(e) decisions to the district court's sound judgment and will only reverse for an abuse of discretion. *Id*.

The district court's use of its discretion in granting the Millers' Rule 59(e) motion fixed an error that, similar to the water that seeped into the Millers' home, slipped into the case. With the Millers waiting for the $485,100.64 Safeco owed them under the policy nearly twenty months after the district court found coverage, and more than four years after first filing their claim, the Millers asked for a finding that Safeco owed them interest

under a state law that requires insurers to pay interest on overdue claims. R. 116 at 2-3. The law, Wis. Stat. § 628.46(1), entitles insureds to interest 30 days after the insurer receives notice of the claim but exempts claims "when the insurer has reasonable proof to establish that the insurer is not responsible for the payment."[1] With the bad faith trial pending, the Millers argued that the coverage finding (on May 30, 2008) eliminated any possibility that Safeco could argue that it had reasonable proof after that date that it wasn't responsible on the claim but they maintained the bad faith trial could "establish that Safeco lacked reasonable proof to deny their claim even well before" the coverage determination. R. 116 at 3. This meant, according to the Millers, that Safeco owed them interest on the $485,100.64 starting *at least* as early as 30 days after the coverage finding. At the end

---

[1] Wis. Stat. § 628.46(1) provides in relevant part: "Unless otherwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after written notice is furnished to the insurer. Any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer."

of the bad faith trial, the Millers asked that the interest calculation begin 30 days after the day Safeco denied coverage (April 17, 2006) because Safeco employee testimony established that Safeco did not have the "reasonable proof" required by § 628.46(1) at that time. R. 158 at 17-18. The court found that the Millers didn't have evidence that they gave Safeco notice of the entire $485,100.64 figure before the coverage finding, but noted that the Millers gave Safeco notice in their initial claims letter of $315,840 in repairs and $3,030 in monthly housing costs. The court, as it explained later, understood the Millers to be asking for interest on the entire $485,100.64 starting 30 days after the denial of their claim. The court thus found that the Millers were entitled to interest on the $485,100.64 beginning 30 days after the coverage finding. Short Appx. at 59-60.

The Millers filed a Rule 59(e) motion to respond to the court's order to supplement their claim for mortgage interest damages, Doc. 168 at 2-4, but also used it to address the court's findings on when interest began accruing and on what amount. The Millers conceded they couldn't recover interest on the $485,100.64 until the coverage finding, *id.* at 5, but noted that the court recognized they gave Safeco notice of a claim for $315,840 plus $3,030 in monthly housing costs in their initial claims letter. *Id.* at 4-5 & n.4 (emphasizing portion of Wis. Stat. § 628.46(1) deeming overdue "any partial amount supported by written notice" not paid within 30 days). The Millers acknowledged that they didn't appreciate the "rigidity" of the 30-day period but believed that a proper interpretation of the Wisconsin

law required Safeco pay interest on their initial claim for $315,840 plus $3,030 in monthly housing costs starting 30 days after their initial claim. *Id.* at 6-7.

The court granted the motion, finding that the Millers weren't presenting "entirely new arguments," or "a new legal theory," but an argument they "could have previously made." Short Appx. at 69-70. Yet, as the district court acknowledged, the Millers weren't required to make this argument earlier because prejudgment interest is "encompassed within the merits of the underlying action," making it a matter appropriately within the district court's discretion on a Rule 59(e) motion. *Id.* at 70-71 (quoting *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 (1989)). The Millers could have been clearer, *id.* at 69, but the court didn't believe they should "be penalized for wrongly computing prejudgment interest before judgment was entered," *id.* at 71.

Safeco argues that the district court erred in allowing the Millers to use the Rule 59(e) motion to present a new argument "to complete presenting" their case. *First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 572 (7th Cir. 2009) (district court "entitled to conclude that raising the issue of prejudgment interest for the first time in a Rule 59(e) motion" improper). But unlike *First State Bank*, the Millers weren't completing their case's presentation; they were simply correcting an error that "crept into the proceeding." Short Appx. at 66 (quoting *Sosebee v. Astrue*, 494 F.3d 583, 589 (7th Cir. 2007)). Safeco also argues that the district court abused its discretion because its grant of the motion along with

its finding that the Millers "could have previously made" the argument, Short Appx. at 70, conflicted with the rule that Rule 59(e) motions may not be used to make arguments "that *could and should have* been made before the district court rendered a judgment." *LB Credit Corp.*, 49 F.3d at 1267 (emphasis added). But in its focus on the finding that the Millers *could have made* the argument earlier, Safeco ignores that the district court found that this was not an argument the Millers *had to make* earlier. Short Appx. at 70-71 (citing *Osterneck*, 489 U.S. at 175-76 & n.3). Given the deference we entrust district courts on Rule 59(e) motions, and that such motions are appropriately used to fix errors, *Moro*, 91 F.3d at 876, we are not going to find efforts to arrive at the right answer on the interest calculation an abuse of discretion merely because the Millers took the court on a circuitous route to get there.

### III. Conclusion

We AFFIRM the district court's judgment.