In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2580

RANDAL STRAUSS AND DIANE
STRAUSS,

*Plaintiffs-Appellees*,

*v.*

CHUBB INDEMNITY INSURANCE
COMPANY, VIGILANT INSURANCE
COMPANY, FEDERAL INSURANCE
COMPANY, AND GREAT NORTHERN
INSURANCE COMPANY,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Wisconsin
No. 11 CV 981 — **Aaron E. Goodstein**, *Magistrate Judge.*

ARGUED FEBRUARY 10, 2014 — DECIDED NOVEMBER 18, 2014

Before HAMILTON, *Circuit Judge,* and KENDALL, *District Judge.*[1]

KENDALL, *District Judge.* Randal and Diane Strauss constructed a home in Mequon, Wisconsin in 1994. The Strausses insured the home with a number of policies (collectively, "the Policy") issued by Chubb Indemnity Insurance Company, Vigilant Insurance Company, Federal Insurance Company, and Great Northern Insurance Company (collectively, "the Chubb Defendants") from October 1994 to October 2005. Water infiltrated and damaged the home through a defect present since the completion of construction; however, the damage went undiscovered until 2010, well after the Policy expired. When the Strausses submitted a claim to the Chubb Defendants seeking recovery for the damage, they refused coverage, contending that because the damage manifested in 2010 and the "manifestation" trigger applies to first-party property insurance, it could not be responsible for the damage. The Chubb Defendants additionally asserted that the claim was submitted well beyond the applicable statute of limitations. *See* Wis. Stat. § 631.83(1)(a). The Strausses subsequently brought this action. The district court concluded that the "continuous" trigger theory applied due to the language of the Policy such that coverage existed for the entire loss. Because the continuous trigger theory applied, the district court found that the

---

[1] The Honorable Virginia M. Kendall, District Judge for the United States District Court, Northern District of Illinois, sitting by designation. Chief Judge Wood recused herself after oral argument and has not participated in deciding this appeal. This decision is being issued by a quorum of the panel. *See* 28 U.S.C. § 46(d).

claims were not time-barred. The Chubb Defendants now appeal, arguing that (1) the manifestation trigger theory applies to first-party property insurance policies universally and (2) the Strausses' suit was not timely filed. For the following reasons, we affirm.

## I. Background

The Strausses built their home in Mequon, Wisconsin in 1994. To insure the home, they purchased a "Chubb Masterpiece Deluxe Home Coverage" first-party property insurance policy. The Policy was issued by the Chubb Defendants over the years, from the time of construction in October 1994 through October 2005.[2] From 2005 onward, the Strausses obtained insurance coverage for the home from other providers.

The Policy states that coverage is limited "only to occurrences that take place while this policy is in effect." "Occurrence" is defined as "a loss or accident to which this insurance applies occurring within the policy period. Continuous or repeated exposure to substantially the same general conditions unless excluded is considered to be one occurrence." Under the Policy taken out by the Strausses, a " 'covered loss' includes **all risk** of physical loss to [the] house or other property . . . unless stated otherwise or an exclusion applies." In addition, the Policy includes a "Legal Action Against Us" clause, mandating

---

[2] Vigilant issued the policy from October 1994 to October 2000 and October 2002 to October 2004; Federal from October 2000 to October 2002; Chubb from October 2004 to October 2005; and Great Northern from October 2004 to October 2005.

that any action against the Chubb Defendants be brought "within one year after a loss occurs."

In October 2010, the Strausses discovered that water infiltration had been causing damage within the building envelope of the home. The infiltration was ongoing and progressive in nature, beginning around the time of original construction and continuously occurring with each subsequent rainfall. On December 22, 2010, the Strausses submitted a claim to the Chubb Defendants for the discovered damage. The Chubb Defendants denied coverage, relying on two bases: (1) the damage was not discovered during any of their policy periods; and (2) any legal action was time-barred pursuant to both the applicable Wisconsin Statute of Limitations, *see* Wis. Stat. § 631.83(1)(a), and the "Legal Action Against Us" clause found in the Policy.

The Strausses filed suit in federal court on October 19, 2011, within one year of their discovery of the damage caused by the water infiltration. The parties cross-moved for summary judgment. The district court initially denied both motions, finding factual issues regarding the language of the Policy. Upon reassignment to the Magistrate Judge and after clarification of the language within the Policy, the parties sought reconsideration of their motions for summary judgment. On February 13, 2013, the district court concluded that the "continuous" trigger theory applied to the "occurrence based" Policy at issue because the Policy provided coverage for ongoing losses. Because the "continuous" trigger theory applied, the district court additionally found that the Strausses' claim was not time-barred. Accordingly, the Chubb Defendants were deemed liable for the damage. Upon this determination

of liability, the parties stipulated to damages while reserving any appellate rights. This timely appeal followed.

## II. Discussion

We review the district court's interpretation of the insurance policy, as well as its grant or denial of a summary judgment motion, *de novo*. *Nautilus Ins. Co. v. Bd. of Dirs. of Regal Lofts Condo. Ass'n*, 764 F.3d 726, 730 (7th Cir. 2014); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 723 (7th Cir. 2011). Likewise, determinations of law in applying a statute of limitations are reviewed *de novo*. *See KDC Foods, Inc. v. Gray, Plant, Mooty, Mooty & Bennett, P.A.*, 763 F.3d 743, 749 (7th Cir. 2014). The parties agree that Wisconsin law applies to the key legal question presented in this case: whether the "manifestation" trigger theory or "continuous" trigger theory applies to the Policy. We construe the Policy as it would be understood by a reasonable person in the Strausses' position, but we will not interpret the Policy to provide coverage for risks the Chubb Defendants did not contemplate and for which they did not receive premiums. *See Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 268 Wis.2d 16, 673 N.W.2d 65, 73 (2004).

The interpretation of an insurance contract is a question of law. *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 315 Wis.2d 556, 759 N.W.2d 613, 620 (2009). In Wisconsin, insurance policies are interpreted under the same rules that apply to contract construction. *See Marotz v. Hallman*, 302 Wis.2d 428, 734 N.W.2d 411, 421 (2007). The primary objective in interpreting a contract is to ascertain and carry out the intentions of the parties. *Wadzinski v. Auto-Owners Ins. Co.*, 342 Wis.2d 311, 818 N.W.2d 819, 824 (2012). The insurance policy's words shall be

given their common and ordinary meaning, and when the policy language is plain and unambiguous, the policy is enforced as written, "without resorting to the rules of construction or principles from case law." *Johnson Controls, Inc. v. London Market*, 325 Wis.2d 176, 784 N.W.2d 579, 586 (2010). If the language is ambiguous, its ambiguity is construed in favor of coverage for the insured. *Id.* The language of the policy determines the extent of coverage. *Soc'y Ins. v. Town of Franklin*, 233 Wis.2d 207, 607 N.W.2d 342, 345 (Wis. Ct. App. 2000).

## A. Coverage

For an insurance policy to potentially provide coverage to an insured, a triggering event must occur during the policy's period of enforcement. *Soc'y*, 607 N.W.2d at 345-46. Because a triggering event is necessary to implicate coverage, the core issue in this case is how coverage is triggered under the Policy for the water infiltration damage to the home. Wisconsin has described four different theories to determine whether a "triggering" event occurred during a relevant policy period:

> The "exposure" theory fixes the date of injury as the date on which the injury-producing agent first contacted the body or the date on which pollution began. The "manifestation" theory holds that the compensable injury does not occur until it manifests itself in the form of a diagnosable disease or ascertainable property damage. The "continuous trigger" theory, also known as the "triple trigger" theory, provides that the injury occurs continuously from exposure until manifestation. Finally, the "injury-in-fact" theory allows the finder of fact to place the

> injury at any point in time that the effects of expo-
> sure resulted in actual and compensable injury.

*Id.* at 346; *see also* Michael G. Doherty, *Allocating Progressive Injury Liability Among Successive Insurance Policies*, 64 U. Chi. L. Rev. 257, 261 (1997). Here, the competing theories put forth by the parties are the manifestation and continuous triggers. Under the manifestation trigger theory, only the insurer that bears the risk at the time the loss manifests or can be discerned is responsible for indemnification once coverage is found to exist. *Prudential-LMI Commercial Ins. v. Super. Ct.*, 51 Cal.3d 674, 798 P.2d 1230, 1246-47 (1990). Under the continuous trigger theory in the context of progressive damage, all policies in effect from the time the loss begins to the time the loss manifests owe coverage. *Plastics*, 759 N.W.2d at 626. Selecting the proper trigger theory is a prerequisite to determining whether the water infiltration damage was covered.

The Chubb Defendants urge us to impose the manifestation trigger theory, primarily arguing that the continuous trigger theory should be limited to third-party coverage cases and that the manifestation trigger is the *only* trigger suitable to analyzing first-party property insurance policies. They cite a variety of cases from jurisdictions across the country utilizing the manifestation trigger in this context; however, noticeably absent from this list is any decision from a Wisconsin court. *See generally*, *Scottsdale Ins. Co. v. CB Entm't*, No. 11-22838-CIV, 2012 WL 2412154 (S.D. Fla. June 26, 2012); *Mangerchine v. Reaves*, 63 So.3d 1049 (La. Ct. App. 2011); *State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313 (Tex. App. 2004); *John Q. Hammons Hotels, Inc. v. Factory Mut. Ins. Co.*, No. 01-3654 CV S

SOW, 2003 WL 24216814 (E.D. Mo. Aug. 14, 2003); *Winding Hills Condo. Ass'n v. N. Am. Specialty Ins. Co.*, 332 N.J. Super. 85, 752 A.2d 837 (N.J. Super. Ct. App. Div. 2000); *Bostick v. ITT Hartford Grp., Inc.*, 56 F. Supp.2d 580 (E.D. Pa. 1999); *S.W. Heischman, Inc. v. Reliance Ins. Co.*, 30 Va. Cir. 235 (Va. Cir. Ct. 1993); *Jackson v. State Farm Fire & Cas. Co.*, 108 Nev. 504, 835 P.2d 786 (1992); *Prudential*, 798 P.2d 1230 (Cal. 1990).

In essence, the Chubb Defendants seek a bright-line rule requiring use of the manifestation trigger theory in all first-party property insurance coverage disputes. Conveniently enough, we recently declined this very same invitation to limit the continuous trigger to third-party coverage cases and universally apply the manifestation trigger to first-party coverage cases:

> Safeco asks us to carve out an exception and hold, despite a dearth of Wisconsin caselaw, that the continuous trigger theory should only apply in third-party coverage cases because the questions presented in third-party cases . . . aren't present in first-party property damage claims. We aren't inclined to adopt an approach that lacks support from Wisconsin's caselaw . . .

*Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 810-11 (7th Cir. 2012). The Chubb Defendants contend that any reliance on *Miller* is inapposite, arguing that it is factually distinguishable and that the relevant discussion about trigger theories is dicta. Although we ultimately concluded that deciding the trigger issue in *Miller* was unnecessary, of pertinence to our analysis now is that we decided to refrain from instituting a rule

without guidance or input from Wisconsin courts despite being asked to by an insurance company similarly situated to the Chubb Defendants. The lack of support for limiting the continuous trigger theory to the third-party liability context from Wisconsin courts we noted in *Miller* still exists today. Chubb has not offered convincing reasons to predict that the Wisconsin Supreme Court would embrace a bright-line rule imposing the manifestation trigger theory on all first-party insurance contracts, regardless of policy language. *See Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1100 (7th Cir. 2003) (because this is a diversity case, we apply the law of Wisconsin as we believe the Wisconsin Supreme Court would apply it). Defining contract law is typically within the province of the States, and we correspondingly do not find that the Wisconsin Supreme Court would agree with Chubb's position. *See Loucks v. Star City Glass Co.*, 551 F.2d 745, 746 (7th Ci. 1977) ("[W]e sit as a court, not as a legislature; it is not our province as a federal appellate court to fashion for [Wisconsin] what we are certain many would say was a wise and progressive social policy.").

The Chubb Defendants' argument fails not only because Wisconsin courts have never adopted a rule that applies the manifestation trigger independent of the language found in a policy in the first-party context nor exiled the continuous trigger theory to the third-party liability landscape, but also because Wisconsin has unequivocally held that the language of a policy guides the analysis and determines whether coverage exists. *Kremers-Urban Co. v. Am. Emp'rs Ins. Co.*, 119 Wis.2d 722, 351 N.W.2d 156, 164 (1984). In the context of determining whether coverage was implicated under a comprehensive

liability policy, the Wisconsin Supreme Court explained that
the policy language dictated its decision:

> We are invited to engage in a discussion of whether
> policy coverage is triggered by 'exposure' to DES or
> marketing activities . . . or whether policy coverage
> is triggered by the 'manifestation' of adenosis or
> cancerous lesions . . . We decline to engage in such
> discussion, because we limit our review to the
> language of the insurance policies. We restrict our
> interpretation of coverage of the various policies to
> the language of the insurance contracts.

*Id.* Wisconsin courts have consistently maintained this
position. *See Johnson Controls*, 784 N.W.2d at 596 n.20 (court
refused to adopt a general rule regarding layering insurance
policies because "our analysis is driven by policy language–
not generalizable concepts"); *Plastics*, 759 N.W.2d at 626 ("In
our analysis, we are again driven by policy language"); *Am.
Girl*, 673 N.W.2d at 75 (determination of whether an insurance
policy covers a claim depends upon policy language used);
*Soc'y*, 607 N.W.2d at 346 (use of continuous trigger theory was
mandated by the policy language); *State Farm Mut. Auto. Ins.
Co. v. Cont'l Cas. Co.*, 174 Wis.2d 434, 498 N.W.2d 247, 250 (Wis.
Ct. App. 1993) ("The resolution of any coverage dispute is
necessarily governed by the terms of the policy as negotiated
by the parties"); *Wis. Elec. Power Co. v. Cal. Union Ins. Co.*, 142
Wis.2d 673, 419 N.W.2d 255, 258 (Wis. Ct. App. 1987) (focusing
on language and terms of policy to determine whether cover-
age was triggered). Given that Wisconsin law provides a
straightforward path for interpreting the Policy, "we won't

clutter the matter by discussing another jurisdiction's approach to different policies and claims." *Miller*, 683 F.3d at 811. Because Wisconsin consistently bases its decisions regarding coverage disputes solely on the language contained in the policies, regardless of whether the disputed policy is for first-party or third-party liability, we consider the language of the policy in dispute rather than rely on a general theory that would apply regardless of policy language. We therefore review the Policy as it was written and in the context of current Wisconsin law, which does not require the application of any single trigger theory to first-party policies.

Turning to the language of the Policy as mandated by Wisconsin case law, we find that the provisions found in the Policy require the application of the continuous trigger theory. The language demands this result. The Policy covers "**all risk** of physical loss to [the] house or other property covered under this part of [the Policy], unless stated otherwise or an exclusion applies." The Policy applies "only to occurrences that take place while this policy is in effect." "Occurrence" is a defined term, meaning "a loss or accident to which this insurance applies occurring within the policy period. Continuous or repeated exposure to substantially the same general conditions unless excluded is considered to be one occurrence." These provisions are not ambiguous: given the Chubb Defendants' definition of "occurrence," which includes "continuous or repeated exposure," the parties "contemplated a long-lasting occurrence" that could give rise to a loss "over an extended period of time." *See Plastics*, 759 N.W.2d at 626. According to the Policy's plain language, coverage is triggered when a "loss" "occurrence" takes place during the Policy's term. Once

such an occurrence takes place, the Policy protects against "**all risk** of physical loss" to the home. The latent water infiltration constituted a single occurrence under the Policy. Because the Policy covers all risk of physical loss, the water damage triggered coverage.

The Chubb Defendants argue that the Policy language requires the application of the manifestation trigger theory because "loss" in the definition of "occurrence" is not qualified by "physical" and therefore means loss discovery or manifestation. *See Atl. Mut. Ins. Co. v. Lotz*, 384 F. Supp.2d 1292 (E.D. Wis. 2002). But here, the Chubb Defendants read ambiguity into the Policy's provisions when there is none. It is difficult to imagine a clearer, plainer statement than the Policy's Deluxe House Coverage language that a " 'covered loss' includes **all risk** of physical loss to [the] house." We read the Policy from "the objective standpoint of what a reasonable insured would understand the policy to mean, not from the standpoint of what the insurer intended." *Grotelueschen by Doherty v. Am. Family Mut. Ins. Co.*, 171 Wis.2d 437, 492 N.W.2d 131, 134 (1992). The only reasonable interpretation of the Policy's "covered loss" definition is that physical damage to the property triggers coverage; otherwise this provision would be superfluous. *See Progressive N. Ins. Co. v. Olson*, 331 Wis.2d 83, 793 N.W.2d 924, 926-27 (Wis. Ct. App. 2010) ("Interpretations that render policy language superfluous are to be avoided where a construction can be given which lends meaning to the phrase."). We will not needlessly read ambiguity into the Policy; but even if we did, that ambiguity would be resolved in favor of the Strausses. *Id.* at 926. The Chubb Defendants marketed the Strausses' Policy as their "Masterpiece" policy.

A reasonable insured would understand this to be high-end coverage with high premiums and corresponding high-end service.

Here, while there was only one ongoing occurrence as defined by the Policy, there was continual, recurring damage to the property with each successive rainfall. The Chubb Defendants do not dispute that physical damage to the building envelope of the home took place during each policy period from October 1994, when the home was constructed, to October 2010, when the effects of the water infiltration manifested. Because the Policy language demonstrates that the parties intended for the continuous trigger theory to apply, the benefits of the Policy are now available to the Strausses. Although the Chubb Defendants undoubtedly would prefer to have limited what occurrences trigger coverage under the Policy, "when [they] have failed to do so in the insurance contract itself, this court will not rewrite the contract . . . to release the insurer from a risk it could have avoided through a more foresighted drafting of the policy." *Kremers*, 351 N.W.2d at 167. Because neither party contends that an exclusion applies, this completes our analysis of determining whether coverage exists under the Policy. *See Miller*, 683 F.3d at 809 (we use Wisconsin's three-step process to determining coverage: (1) the policy must first make an initial grant of coverage; and (2) if so, we look at whether an exclusion precludes coverage; and (3) if an exclusion applies, we look to see whether an exception reinstates coverage).

Before concluding our discussion of the coverage question, we address the Chubb Defendants' argument that a bright-line manifestation trigger theory is supported by public policy

because it creates certainty for insurers by preventing liability from arising on stale policies. They additionally contend that the application of the continuous trigger theory to first-party property insurance would have the effect of keeping all insurers liable for property damage indefinitely, regardless of whether a policy is still in effect. But these arguments pertain only to a situation where we impose a specific trigger theory on all first-party property insurance contracts, which we decline to do. Because we conclude the Wisconsin Supreme Court would not apply a universal standard, insurance companies remain free to create innovative policies that they draft according to the unique circumstances of each client and policy. In fact, this is apparently the business strategy the Chubb Defendants pursue as described in their 1999 Annual Report: "But there's much more to taking care of customers than competent claim handling. Exceeding expectations begins with designing Insurance policies with innovative and often unique coverage features." We accordingly abstain from limiting Wisconsin insurance companies to any single trigger theory.

Creating a bright-line rule at the Chubb Defendants' request because they perhaps regret the language they drafted for the Policy would be an inappropriate interference with the parties' rights to contract. *See Balt. & O.S.W. Ry. Co. v. Voigt*, 176 U.S. 498, 505 (1900) ("the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy"); *Kuhl Motor Co. v. Ford Motor Co.*, 270 Wis. 488, 71 N.W.2d 420, 423 (1955). The Chubb Defendants were in the best position to dictate how the

Policy would be activated, its coverage, and its exclusions. Letting the Chubb Defendants off the hook now would reward their sloppy drafting. It is not the province of this Court to alter the unambiguous terms of the Policy.

### B. Timeliness of the Suit

The Chubb Defendants argue that the Strausses filed their suit too late, past either a statutory deadline or a time limit imposed by the Policy. Wis. Stat. § 631.83(1)(a) provides that "[a]n action on a fire insurance policy must be commenced within 12 months after the inception of the loss." The phrase "fire insurance" has been interpreted to include all types of property indemnity insurance. *Jones v. Secura Ins. Co.*, 249 Wis.2d 623, 638 N.W.2d 575, 577 n.5 (2002); *Borgen v. Econ. Preferred Ins. Co.*, 176 Wis.2d 498, 500 N.W.2d 419, 421 (Wis. Ct. App. 1993). But this statute of limitations is not absolute; parties to an insurance contract are free to alter the length of a statute of limitations and the date that the limitation period begins to run. *See Keiting v. Skauge*, 198 Wis.2d 887, 543 N.W.2d 565, 567 (Wis. Ct. App. 1995) ("Public policy in this state permits parties to bind themselves by contract to a shorter period of limitation than that provided for by statute.") (quoting *State Dept. of Pub. Welfare v. Le Mere*, 19 Wis.2d 412, 120 N.W.2d 695, 699 (1963)). This conclusion is bolstered by the fact that § 631.83 explicitly prohibits insurance policies from (a) limiting the time for beginning an action on a policy to less than twelve months, (b) prescribing what court an action may be brought in, and (c) providing that no action may be brought under a policy. Wis. Stat. § 631.83(3). Accordingly, by its very terms, the statute contemplates its modification between

parties in private contracts, provided any alterations comport with the three prohibitions listed above. Just as policy language determines how coverage is triggered, policy language also dictates when an action may be brought.

The Chubb Defendants altered the limitation period for the Strausses to initiate suit by diverging from the language found in § 631.83(1)(a). The Wisconsin statute of limitations language stating that a claim must be filed within one year "after the inception of the loss" starts the clock running "from the date of the damage suffered by the insured from any peril covered by the policy of insurance." *Riteway Builders, Inc. v. First Nat'l Ins. Co. of Am.*, 22 Wis.2d 418, 126 N.W.2d 24, 26 (1964). "Inception" means "beginning; start; commencement," and therefore, "the phrase 'inception of the loss' rules out a construction which would postpone the start of the period of limitation until the insured's loss is discovered, or should have been discovered." *Borgen*, 500 N.W.2d at 422. Here, if the Policy employed the same language as that found in § 631.83, the Strausses' claim might be time-barred because it was filed well after one year had passed from the beginning of the water infiltration.

But the Policy employs different language. Rather than require claims to be filed within one year "after the inception of the loss," the Policy permits claims to be filed "within one year after a loss occurs." "After a loss occurs" is fundamentally different from "after the inception." "Inception of the loss" clearly and unmistakably means the beginning of damage, not to mention the fact that it has been unequivocally defined as such by Wisconsin courts. On the other hand, "after a loss occurs" is ambiguous as applied to a progressive loss and can

entirely reasonably be interpreted to mean after a loss completes. *See Wood v. Allstate Ins. Co.*, 21 F.3d 741, 744 (7th Cir. 1994) ("after the date of loss" could plausibly mean either the date on which a fire began or the date on which the fire was extinguished). Because Wisconsin subscribes to the contract tenet that ambiguities are to be construed in favor of coverage for the insured, *Johnson Controls*, 784 N.W.2d at 586, we conclude that the Strausses could have brought their claim at any point up until a year after the water infiltration damage halted.

In Wisconsin, under the continuous trigger theory, a progressive loss "occurs continuously from exposure until manifestation." *Soc'y*, 607 N.W.2d at 346. Here, because the loss was ongoing and occurred with each rainfall and because the Policy itself states that "[c]ontinuous or repeated exposure to substantially the same general conditions unless excluded is considered to be one occurrence," the loss, for purposes of the statute of limitations, occurred all the way up until the damage manifested in October 2010. The parties do not dispute that the Strausses filed suit within one year of manifestation of the water infiltration. Therefore, their suit is timely.

### III. Conclusion

The Policy's language mandates the use of the continuous trigger theory for determining coverage. Similarly, the Policy's definition of "occurrence" and alteration of the statute of limitations made the Strausses' claim timely. For the foregoing reasons, we AFFIRM the ruling of the district court.